[Civ. No. 47634. First Dist., Div. Four. Sept. 3, 1982.]

JERRI HOLMES, Plaintiff and Appellant, v.
CALIFORNIA STATE AUTOMOBILE ASSOCIATION,
Defendant and Respondent.

COUNSEL

Henry C. Krivetsky and William Kiriakis for Plaintiff and Appellant.

John J. Healy and Healy & O'Leary for Defendant and Respondent.

OPINION

**CHRISTIAN, J.**—Jerri Holmes appeals from a summary judgment dismissing an action she brought against respondent California State

Automobile Association on behalf of herself and the class of persons sharing with her the status of dual coverage by respondent and by the Medicare program administered by the United States Department of Health, Education, and Welfare (now the Department of Health and Human Services) for treatment of injuries suffered in an automobile accident.

Appellant was involved in an automobile accident on June 20, 1974, and was hospitalized for her injuries. Before the accident respondent had issued to appellant's mother an automobile liability policy, under which appellant was an insured party; the policy included a medical payment clause providing that respondent would "pay all reasonable expenses incurred by the insured [as a result of an automobile accident]." Appellant was also a beneficiary of the Medicare program administered by the United States Department of Health, Education, and Welfare. Before undergoing hospital treatment, appellant assigned her Medicare benefits to the hospital; payments due to appellant under the program were therefore paid directly to the hospital. Appellant also submitted to respondent for payment the bills issued by the hospital; respondent refused to pay, asserting that no expenses had been "incurred" by her. Appellant sued; respondent took a summary judgment of dismissal, and the present appeal followed.

The central question is whether appellant "incurred" any hospital expenses and thus whether she is entitled to recover them under the provisions of the policy, even though Medicare payments met the major portion of those expenses. The Medicare program was enacted in 1965. (42 U.S.C.A. § 1395 et seq.) Medicare comprises two types of coverage designated in the statute as part A and part B. Part A affords hospital benefits; it is financed through the social security system by payroll deductions; part B provides for other health services and is financed by premiums paid by the beneficiaries. (42 U.S.C.A. § 1395c, § 1395j; see also *Niles* v. *American Bankers Insurance Company* (La.App. 1969) 229 So.2d 435, 438, cert. den. (La.) 231 So.2d 394.) Although financed differently, part A and part B benefits are treated alike in the Medicare rules; specifically, it is required as to both parts that an agreement not to charge patients be signed by participating providers of health services. (42 U.S.C.A. § 1395cc (a)(1).) The hospital at which appellant was treated had chosen to participate in the program. Accordingly, the hospital, by agreement with the United States government, undertook not to charge a patient for services for which the patient was entitled to have payment made by the United States. Respondent contends that

the statute and the agreement both have the effect of precluding appellant from "incurring" hospital expenses within the meaning of the insurance policy issued by respondent.

The agreement provides that, with certain exceptions, the hospital will not charge "any individual or any other person for items and services with respect to which the provider of services is precluded by reason of [statute] from charging such individual or such other person." A related passage of the statute requires that to participate in the program a hospital undertake not to charge "any individual or any other person for items or services for which such individual is entitled to have payment made under this subchapter." (42 U.S.C.A. § 1395cc (a)(1)(A).) But that language does not manifest an intention to preclude liability attaching to the patient; another passage of the same statute recognizes patient liability by stating: "no payment may be made under part A or part B of this subchapter for any expenses incurred for items or services . . . for which the individual furnished such items or services has no legal obligation to pay . . . ." (42 U.S.C.A. § 1395y (a)(2).)

Two additional provisions of the statute are pertinent: (1) "benefits provided to an individual by the insurance program under this part shall consist of entitlement to have payments made on his behalf" (42 U.S.C.A. § 1395d (a)); and (2) any payment to a provider of services such as the hospital here "shall be regarded as a payment to such individual." (42 U.S.C.A. § 1395gg (a).)

To determine whether appellant incurred costs which respondent must indemnify we analyze the interrelated contractual obligations affecting three parties: The hospital entered into an agreement in 1966 with the then Department of Health, Education, and Welfare. Appellant became an insured under an automobile insurance agreement whereby the insurer agreed to pay all expenses incurred by or on behalf of an insured. Appellant was injured in an automobile accident and was taken to the hospital. Prior to admission, appellant signed an agreement ("Conditions of Admission") whereby she undertook to pay the costs of hospitalization. Appellant states that she assigned her Medicare benefits to the hospital but the record does not reflect the terms of any such assignment. In fact, the hospital was paid directly by Medicare.

Respondent argues that no expenses were "incurred" by appellant, because the agreement between the hospital and the United States would preclude the hospital from enforcing any claim against appellant. It is

true that the Medicare legislation provides that no payments will be made for expenses which the patient has no legal obligation to pay; thus, expenses must, so far as concerns the contract between the hospital and the United States, be "incurred" before they can be paid under the Medicare program. It appears, therefore, that the agreement between the hospital and the government has as a condition precedent that expenses be incurred. Here appellant at the time of her admission to the hospital expressly undertook personal liability for the expenses about to be incurred. When a legal obligation to pay was created upon the rendition of services, the Medicare agreement became applicable and the hospital was bound by its commitment "not to charge," i.e., not to enforce against the patient liability for the costs incurred by the patient. We conclude that respondent was liable under the terms of the policy; it was not proper to grant summary judgment dismissing appellant's complaint.

Other state courts have similarly interpreted the term "incurred" in the context of insurance contracts. In *Black* v. *American Bankers Insurance Company* (Tex. 1972) 478 S.W.2d 434, the Texas Supreme Court concluded that the insured "actually incurred" hospital expenses even though those expenses were paid on his behalf by Medicare. (*Id.*, at p. 438. See also *Niles* v. *American Bankers Insurance Company, supra*, 229 So.2d 435 [hospital expenses were "actually incurred" by plaintiff even though these expenses were paid by Medicare]; *Dunbar* v. *National Security Life & Accident Ins. Co.* (Tex.Civ.App. 1969) 439 S.W.2d 892 [plaintiff was liable for "actual hospital expenses" even though the bills were paid by Medicare].)

Two California cases cited by respondent warrant discussion. In *Appleman* v. *National-Ben Franklin Ins. Co.* (1978) 84 Cal.App.3d 1012 [149 Cal.Rptr. 117], the plaintiff was covered by both Medicare and an insurance policy which provided that "'No indemnity shall be payable . . . with respect to such medical expenses *incurred*; . . . (i) for which the Insured, or the eligible members of the Insured's family, is *not required to pay*.'" (*Id.*, at p. 1014; italics added.) The court's analysis emphasized two distinct issues concerning the effect of Medicare payments on the policy coverage: first, were expenses "incurred" and second, was the insured "required to pay" the expenses. Adopting the reasoning of *Black* and *Niles, supra*, the court concluded that the plaintiff had received services for which the government was legally obligated to pay and thus expenses had been actually incurred. (*Ibid.*) Respondent contends that this portion of the *Appleman* decision is distinguish-

able in that the language of the policy here refers to expenses "incurred by the insured" rather than simply "incurred" as in *Appleman.* This slight variation in phraseology does not affect the analysis or determination of the present case.

The *Appleman* court then dealt with the question whether plaintiff was "required to pay" the expenses. Since the insurance policy at issue here does not contain such a provision, *Appleman* diverges in result from the present case. The determination of the *Appleman* court that plaintiff was "not required to pay" the expenses due to Medicare coverage is therefore not now pertinent and respondent's reliance on the latter portion of *Appleman* and its holding is misplaced.

Respondent contends further that its position is supported by *Feit* v. *St. Paul Fire etc. Ins. Co.* (1962) 209 Cal.App.2d Supp. 825 [27 Cal. Rptr. 870]. In fact, it is appellant's argument that is assisted. In *Feit,* the court considered whether plaintiff could recover under both an automobile insurance policy and a group health insurance plan where the auto insurance policy covered "reasonable expenses incurred." This provision, standing alone, appeared to be ambiguous in that it did not state who was required to incur the expenses. (*Id.,* at p. 828.)

But the court concluded that when viewed in its entirety, the policy was not ambiguous; the bodily injury and property damage portion of the policy contained an agreement to "'pay on behalf of the insured all sums which [the insured] shall become legally obligated to pay.' If the defendant had intended to limit its liability for medical expenses to such expenses as the insured should become legally liable to pay it would have employed the same language" in the medical payments portion of the policy as it did in the bodily injury and property damage section. The contract here, as in *Appleman,* may appropriately be interpreted to mean that the insurer "intended to pay for medical expenses incurred . . . whether or not the insured was legally obligated to pay them." *Feit* v. *St. Paul Fire etc. Ins. Co., supra,* 209 Cal.App.2d Supp. at page 828.

Appellant's notice of appeal characterizes the present case as an appeal from both the summary judgment granted to respondent and an appeal from the denial of appellant's motion for summary judgment. An order denying a motion for summary judgment is nonappealable. (*Nystrom* v. *First Nat. Bank of Fresno* (1978) 81 Cal.App.3d 759, 763 [146 Cal.Rptr. 711]; see also 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 66, p. 4080.) Although the denial of appellant's motion

for partial summary judgment was designated a "judgment," in effect it was an order, interlocutory in nature. "The question as affecting the right of appeal is not what the form of the order may be, but what is its legal effect." (*Nevada Constructors* v. *Mariposa etc. Dist.* (1952) 114 Cal.App.2d 816, 818 [251 P.2d 53].) The attempted appeal from such an order here must be dismissed.

The summary judgment is reversed; the purported appeal from the denial of appellant's motion for partial summary judgment is dismissed.

Caldecott, P. J., and Poché, J., concurred.

A petition for a rehearing was denied September 23, 1982, and respondent's petition for a hearing by the Supreme Court was denied October 28, 1982.