19 P.3d 621

**Michael and Cynthia SAMSEL, husband and wife; Lisa Samsel, a single woman, Plaintiffs/Appellees,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant/Appellant.**

**No. 2 CA–CV 98–0226.**

Court of Appeals of Arizona, Division 2, Department B.

Feb. 27, 2001.

As Corrected March 22, 2001.*

* Judge Flores and Judge Pelander concurring.

Law Office of Bruce A. Burke, P.C., by Bruce A. Burke, Tucson, Robert Q. Hoyt, Tucson, for plaintiffs/appellees.

Steptoe & Johnson, LLP, by Floyd P. Bienstock, Bennett Evan Cooper, Phoenix, Sonnenschen Nath & Rosenthal, by Jeffrey Lennard, Mark Hanover, Chicago, Illinois, for defendant/appellant.

## OPINION

DRUKE, Judge.

¶ 1 This appeal asks us to determine whether the medical payments coverage of an automobile insurance policy issued by Allstate Insurance Company covers accident-related health care expenses of its insured, Lisa Samsel, even though most of the expenses were covered by her health care services organization (HMO). Based on the following undisputed facts, we conclude that the policy covers those expenses.

¶ 2 Lisa sustained injuries in an automobile accident and was taken by ambulance to University Medical Center (UMC), where she received medical care and signed a "Conditions of Admission" form, agreeing "to pay all of [her UMC] charges as and when billed." At the time, Lisa was enrolled in Partners Health Plan, an HMO governed by the provisions of A.R.S. §§ 20–1051 through 20–1077. Lisa was also an insured under her parents' Allstate automobile policy. Although the policy included medical payments coverage, for which the parents paid an additional premium, Allstate paid only those hospital and medical charges that were not covered by Lisa's HMO and denied coverage on the remaining charges billed to Lisa, asserting that because her HMO was obligated to pay them, Lisa had not "actually incurred" those charges, as required by the policy.

¶ 3 Lisa and her parents sued Allstate, alleging breach of contract, bad faith, and other claims. After both parties moved for summary judgment on the breach of contract claim, the trial court granted summary judgment in favor of Lisa and her parents and expressly entered final judgment pursuant to

Rule 54(b), Ariz.R.Civ.P., 16 A.R.S.[1] The trial court then denied Allstate's motions for a new trial and discovery. This appeal followed.

¶ 4 "Our standard of review for a grant of summary judgment is *de novo* for both factual and legal determinations." *Aranki v. RKP Inv., Inc.,* 194 Ariz. 206, ¶ 6, 979 P.2d 534, ¶ 6 (App.1999). A trial court properly grants summary judgment when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz.R.Civ.P. 56(c). *See also Orme School v. Reeves,* 166 Ariz. 301, 802 P.2d 1000 (1990).

¶ 5 The trial court granted summary judgment based primarily on *Coconino County v. Fund Administrators Ass'n, Inc.,* 149 Ariz. 427, 719 P.2d 693 (App.1986). There, a high school student had been injured while participating in an interscholastic wrestling meet. Because the student was eligible for county medical care, however, the administrator for the group insurance policy covering the event refused reimbursement for the student's hospital expenses, arguing that the policy provided reimbursement "only for 'expenses actually incurred' by the covered person." *Id.* at 430, 719 P.2d at 696. Division One of this court rejected the argument, finding that " '[i]ncur' is generally accepted to mean 'to become liable for', not 'to pay for' " and that the hospital admission form signed by the student's legal guardian "expressly provided that [the student] and his guardian were the ultimate guarantors of the treatment costs." *Id., quoting Collins v. Farmers Ins. Exch.,* 271 Minn. 239, 135 N.W.2d 503, 507 (1965). The court thus held that because the hospital "could have proceeded against [the student] . . . and sought payment," he "did actually incur expenses during his hospitalization." *Id.*

¶ 6 Other courts have reached a similar conclusion. For example, in *Hermitage Health and Life Insurance Co. v. Cagle,* 57 Tenn.App. 507, 420 S.W.2d 591, 593 (1967), the court observed: "We believe the word 'incur' means 'to become liable for' and does not mean to actually 'pay for' as insisted by the defendant [insurance company]." And,

in *Dillione v. Deborah Hospital,* 113 N.J.Super. 548, 274 A.2d 597, 600 (1971), the court reviewed cases from several jurisdictions and concluded:

> The general rule is that the insured will not be barred from recovery on a policy providing for payment of hospital or medical services, etc., for which he has 'incurred expense,' or similar [policy] language, by mere reason of the availability of collateral means of discharging his liability therefor so as to have relieved him of the need to pay the charges personally.

*See also Hollister v. Government Employees Ins. Co.,* 192 Neb. 687, 224 N.W.2d 164, 166 (Neb.1974) (military serviceman "incurred" medical expenses for wife's care in civilian hospital; law implies promise to pay reasonable value of services furnished by another); *Black v. American Bankers Ins. Co.,* 478 S.W.2d 434, 438 (Tex.1972) (insured under medical insurance policy "actually incurred" hospital expenses paid by Medicare on his behalf); *Republic Bankers Life Ins. Co. v. Anglin,* 433 S.W.2d 795, 796 (Tex.Civ.App. 1968) (injured employee "actually incurred" hospital expenses covered by workers' compensation); *Graham v. Reserve Life Ins. Co.,* 274 N.C. 115, 161 S.E.2d 485, 491 (1968) (policyholder "incurred" medical expenses upon admission into state hospital as nonindigent); 8A John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 4902.50 (1981).

¶ 7 But courts have reached a contrary conclusion when the medical services are provided without cost or free of charge. Illustrative is *United States v. Metropolitan Life Insurance Co.,* 683 F.2d 1250 (9th Cir.1982), in which veterans had received free medical treatment in Veterans Administration facilities and had assigned their rights under their insurance policies to the government. The court held that because the policies conditioned reimbursement on the insured "incurring expense," the insurance company was not liable to the government for the veterans' free care. *Id.* at 1252. *See also Lefebvre v. Government Employees Ins. Co.,* 110 N.H. 23, 259 A.2d 133 (1969) (military serviceman

---

1. The parties also moved for summary judgment on other claims, but those motions were denied.

did not incur expenses for medical care rendered without cost to wife at military hospital).

¶ 8 Allstate acknowledges *Coconino*'s holding and the principles enunciated above but contends § 20–1072 precludes their application in this case. The relevant sections of the statute provide:

A. Every written contract between a[n][HMO] and a provider or hospital shall set forth that if the [HMO] fails to pay for covered health care services as set forth in the enrollee's evidence of coverage or contract the enrollee is not liable to the provider or hospital for any amounts owed by the [HMO] and the provider or hospital shall not bill or otherwise attempt to collect from the enrollee the amount owed by the [HMO].

B. If the written contract between the contracting provider or hospital and the [HMO] fails to contain the required prohibition stated in subsection A, the enrollee is not liable to the contracting provider or hospital for any amounts owed by the [HMO].

C. No contracting provider or agent, trustee or assignee of the contracting provider or hospital may maintain an action at law against an enrollee to collect any amounts owed by the [HMO] for which the enrollee is not liable to the contracting provider under subsection A.

. . . .

E. Nothing in this section prohibits an enrollee from seeking health care services from a contracting or noncontracting provider or hospital and accepting financial responsibility for these services.

¶ 9 Allstate claims subsections A, B, and C establish, as a matter of law, that Lisa is not liable for the UMC charges covered by her HMO and thus, unlike the student in *Coconino*, Lisa did not "actually incur" those charges. In response, Lisa argues that, notwithstanding subsections A through C, she could and did accept financial responsibility for the charges pursuant to subsection E when she signed UMC's "Conditions of Admission" form. We review de novo the interpretation of a statute. *State Compensation Fund v. Superior Court*, 190 Ariz. 371, 948 P.2d 499 (App.1997). We read the statute as a whole, giving "meaningful operation to each of its provisions." *Ruiz v. Hull*, 191 Ariz. 441, ¶ 35, 957 P.2d 984, ¶ 35 (1998).

¶ 10 Allstate asserts that, logically read, subsection E allows enrollees "to accept financial responsibility only for health care services that are *not covered* by their [HMO] plan." Allstate cites no authority for this narrow reading, and we find it disregards the subsection's express language. A cardinal principle of statutory construction requires us to interpret a statute, "whenever possible, so that no clause, sentence, or word is rendered superfluous, void, contradictory, or insignificant." *Continental Bank v. Arizona Dep't of Revenue*, 131 Ariz. 6, 8, 638 P.2d 228, 230 (App.1981). Indeed, "the best and most reliable index of a statute's meaning is its language." *Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). Subsection E's language allows an HMO enrollee to expressly accept responsibility for services provided by either "a contracting or noncontracting provider." To ignore this explicit language would violate the rule that requires us to give words "their natural, obvious, and ordinary meaning." *Ruiz*, 191 Ariz. 441, ¶ 33, 957 P.2d 984, ¶ 33. Subsection E's specific language thus encompasses both types of providers and refutes Allstate's assertion that it applies exclusively to services not covered by the enrollee's HMO.

¶ 11 Nor do we agree with Allstate that this interpretation makes "no sense" or renders subsections A through C "meaningless." Although the legislature did not expressly state its intent or purpose with respect to § 20–1072 and its related statutes,[2] subsection E obviously encourages providers to furnish health care services when coverage or payment may be uncertain. It allows providers to obtain an enrollee's acceptance of financial responsibility for the services and thus gives providers greater assurance that they will receive payment, regardless of whether the enrollee's HMO covers the service, declines coverage, becomes insolvent, or

**2.** *See* 1988 Ariz.Sess.Laws, ch. 28, § 6.

otherwise fails to make payment. By the same token, subsection E allows enrollees to obtain necessary health care services when a an HMO refuses coverage or coverage for some services may be questionable.

¶ 12 Allstate nonetheless argues that "to the extent [Lisa's admission form] is construed as attempting to waive the protections of [subsections A through C], it is void and unenforceable," citing *Landi v. Arkules*, 172 Ariz. 126, 835 P.2d 458 (App.1992). In *Landi*, the defendants claimed their failure to obtain a statutorily required private investigator's license did not render their "heir finder" agreement unenforceable. Relying on the general principle that "[a]n agreement is unenforceable if the acts to be performed would be illegal or violate public policy," *id.* at 133, 835 P.2d at 465, this court held that "the regulation of private investigators is so infused with important public policy considerations that a contract to perform investigations is, in the absence of a license, unenforceable." *Id.* at 135, 835 P.2d at 467. The general principle enunciated in *Landi* simply does not apply here, however. As already noted, subsection E unequivocally authorizes an HMO enrollee, such as Lisa, to accept financial responsibility for health care services. Consequently, the admission form that she signed accepting such responsibility was expressly authorized by statute and can be neither void nor unenforceable on the grounds that it is illegal or violates public policy.

¶ 13 Allstate urges two additional grounds for not enforcing Lisa's agreement to accept responsibility for her UMC charges: the agreement is without consideration, and it constitutes an unenforceable adhesion contract. Lisa responds that Allstate has no "standing" to raise these defenses. "Standing" is a judicially imposed requirement that parties possess an interest in the outcome to preclude advisory decisions. *See Citibank (Arizona) v. Miller & Schroeder Fin., Inc.*, 168 Ariz. 178, 812 P.2d 996 (App.1990). Although Lisa may have mischaracterized the issue as a question of "standing," we do find that Allstate lacks "privity" of contract to challenge the agreement's validity or enforceability.

¶ 14 "Privity is that connection or relationship which exists between two or more contracting parties." *First Nat'l Bank of Windsor v. Gilbert Marshall & Co.*, 780 P.2d 73, 75 (Colo.Ct.App.1989). It arises from the mere fact of entering into a contract. 13 Samuel Williston & Richard A. Lord, *Williston on Contracts* § 37:1 (4th ed.2000). Generally, privity of contract must exist before one may seek to enforce or defeat the contract. *See Stratton v. Inspiration Consol. Copper Co.*, 140 Ariz. 528, 683 P.2d 327 (App.1984) (lack of privity precluded breach of contract claim); *Hatton v. Greenberg*, 9 Ariz.App. 327, 451 P.2d 905 (1969) (usury defense not ordinarily available to noncontracting party); *Stephens v. Brekke*, 977 S.W.2d 87 (Mo.Ct.App.1998) (non-party cannot claim contract unenforceable); *Hatcher v. Harleysville Mut. Ins. Co.*, 266 S.C. 548, 225 S.E.2d 181 (1976) (stranger to contract precluded from asserting its unenforceability).

¶ 15 But a non-party, such as Allstate, who qualifies as a third-party beneficiary, may be able to sue to enforce a contract. However, "[f]or a third party to maintain an action on a contract, the contract must have been entered into for the express benefit of the third party; the party cannot be merely an incidental beneficiary." *Araiza v. U.S. West Bus. Resources, Inc.*, 183 Ariz. 448, 454, 904 P.2d 1272, 1278 (App. 1995). *See also Norton v. First Fed. Sav.*, 128 Ariz. 176, 624 P.2d 854 (1981) (contemplated benefit must be intentional and direct); *Irwin v. Murphey*, 81 Ariz. 148, 302 P.2d 534 (1956) (contracting parties must intend to recognize third party as beneficiary). Whether one is a third-party beneficiary presents a question of law for the court. *See Araiza.* Allstate is not a third-party beneficiary of Lisa's agreement with UMC to accept responsibility for her UMC expenses. Nothing in the agreement indicates that Lisa or UMC intended to expressly or directly benefit Allstate. *See Araiza; Norton.* Moreover, Allstate seeks not to enforce the agreement but to defeat it, a position contrary to that of a third-party beneficiary.

¶ 16 For the foregoing reasons, we hold that notwithstanding the provisions of subsections A through C of § 20–1072, subsection E of the statute authorized Lisa to accept financial responsibility for her UMC hospital and medical expenses, even though most of the expenses were covered by her HMO. When Lisa signed UMC's "Conditions of Admission" form, she agreed to accept responsibility and, thus, liability for the expenses subject, of course, to any affirmative defenses she might have to that liability, such as failure of consideration, duress, waiver, or payment. *See* Ariz.R.Civ.P. 8(c). Accordingly, Lisa "actually incurred" those expenses for coverage purposes under the medical payments provision of Allstate's policy.[3] The trial court could, therefore, properly grant summary judgment to Lisa and her parents on their breach of contract claim, absent any genuine issues of material fact.

¶ 17 Allstate attempted to raise such a factual issue in its motions for a new trial and discovery. Allstate argued that, in granting summary judgment, the trial court had improperly inferred that Lisa had made a knowing and informed waiver of the protections provided by subsections A through C of § 20–1072 when she signed the "Conditions of Admission" form. Allstate thus sought to depose Lisa and representatives of UMC and her HMO on the waiver issue. The trial court denied the motions, a decision we review for an abuse of discretion. *See Piper v. Bear Med. Sys., Inc.* 180 Ariz. 170, 883 P.2d 407 (App.1993) (denial of new trial reviewed for abuse of discretion); *Lewis v. Arizona Dep't of Econ. Sec.*, 186 Ariz. 610, 925 P.2d 751 (App.1996) (abuse of discretion used to review trial court's discovery ruling). We find no abuse of discretion here. As discussed above, Allstate lacks privity of contract to assert defenses challenging the admission form's validity or enforceability, and this includes Allstate's alleged waiver defense.

¶ 18 We therefore affirm the trial court's order granting summary judgment in favor of Lisa and her parents on the breach of contact claim. And, pursuant to their request under A.R.S. § 12–341.01, we will award Lisa and her parents attorney's fees on appeal upon compliance with Rule 21(c), Ariz.R.Civ.App.P., 17B A.R.S.

CONCURRING: PELANDER, Judge FLÓREZ, Judge.

---

---

3. Our holding does not conflict with that reached by the majority in *Haisch v. Allstate Insurance Co.*, 197 Ariz. 606, 5 P.3d 940 (App.2000). Although *Haisch* also involved Allstate's denial of medical payments coverage for accident-related medical expenses that were covered by the insured's HMO, the insured's various claims against Allstate did not include a breach of contract claim and, thus, Division One was not called upon to address, as we do here, the insured's liability for such expenses under § 20–1072(E).