SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| MICHAEL and CYNTHIA SAMSEL, husband and wife; LISA SAMSEL, a single woman, | ) ) ) ) | Arizona Supreme Court No. CV-01-0158-PR |
| | ) | Court of Appeals |
| Plaintiffs/Appellees, | ) ) | Division Two No. 2 CA-CV 98-0226 |
| v. | ) ) | Pima County Superior Court |
| ALLSTATE INSURANCE COMPANY, | ) ) | No. C-310775 |
| Defendant/Appellant. | ) ) | |
| | ) | **O P I N I O N** |

Appeal from the Superior Court in Pima County
The Honorable John M. Quigley
The Honorable Kenneth Lee
AFFIRMED

_____

Opinion of the Court of Appeals, Division Two
199 Ariz. 480, 19 P.3d 621 (App. 2001)
VACATED

Bruce A. Burke                                                             Tucson
        - and -
Robert Q. Hoyt                                                            Tucson
Attorneys for Plaintiffs/Appellees

Steptoe & Johnson, L.L.P.                                           Phoenix
        By:    Floyd P. Bienstock
               Bennett Evan Cooper
        - and -
Sonnenschein, Nath & Rosenthal                               Chicago
        By:    Jeffrey Lennard
               Mark Hanover
Attorneys for Defendant/Appellant

Arizona Trial Lawyers Association                             Phoenix
        By:     Amy G. Langerman
Attorneys for Amicus Curiae

MYERS, Judge

¶1 Defendant/Appellant Allstate Insurance Co. appealed from an adverse summary judgment on a claim for breach of the medical payments coverage provisions of an automobile policy Allstate issued to Plaintiffs/Appellees Michael and Cynthia Samsel. The court of appeals affirmed, holding that reasonable medical expenses paid on behalf of Lisa Samsel, the injured party, by her health maintenance organization (HMO) were expenses actually incurred by Lisa for purposes of Allstate's medical payments coverage, notwithstanding the provisions of A.R.S. § 20-1072. *Samsel v. Allstate Ins. Co.*, 199 Ariz. 480, 19 P.3d 621 (App. 2001). This petition for review followed. We have jurisdiction pursuant to Arizona Constitution article VI, § 5(3) and Rule 23, Ariz.R.Civ.App.P. We granted review to consider a question of first impression: are expenses for medical services necessary to treat injuries actually incurred by the insured within the meaning of the medical payment coverage of an automobile policy when those expenses are paid by the insured's HMO and a statute immunized the HMO's enrollees from legal liability for covered expenses.

### FACTS

¶2 In August 1995, Lisa Samsel was injured in a Tucson automobile accident. She was taken by ambulance to University Medical Center (UMC) and treated there. The following day, Lisa signed a UMC "Conditions of Admission" form, agreeing in part to "pay all of [her] Hospital charges as and when billed." At the time of the accident, Lisa was an insured under an Allstate automobile policy issued to her parents in 1993. The Allstate policy included medical payments coverage with a limit of $10,000, for which her parents paid an additional annual premium of $300. Lisa was also enrolled, since April 1995, in Partners Health Plan (Partners), an HMO regulated as a health care services organization pursuant to A.R.S. §§ 20-1051 *et seq.*

¶3 As a result of her injuries, Lisa's charges at UMC totaled $16,413 in medical services and $2,494 in physicians' services. Upon her discharge, UMC billed Lisa as a guarantor. Partners ultimately paid all but $313.55 of Lisa's expenses. She subsequently filed a claim with Allstate under

2

the Samsels' medical payments coverage. Allstate paid only the $315.55 that had not been paid by Partners and denied coverage on the remaining charges, saying that because Partners was obligated to and did pay the charges, Lisa had not actually incurred those expenses, as required by the medical payments provision of its policy.

¶4       The Samsels sued Allstate, alleging among their claims breach of contract and bad faith. They subsequently amended their complaint to add class action allegations. Both parties moved for summary judgment on the breach of contract claim before proceeding on the class action issues. The trial judge granted summary judgment in favor of the Samsels on the breach of contract claim, denied Allstate's motion on the same issue, and entered final judgment in favor of the Samsels for $9,686.45, representing the difference between the coverage limits and the $313.55 Allstate previously paid.

¶5       On Allstate's appeal, the court of appeals held that when Lisa signed UMC's admission form,[1] she agreed to accept financial responsibility and liability for her medical expenses. *Samsel*, 199 Ariz. at 485 ¶ 16, 19 P.3d at 626 ¶ 16. Therefore, Lisa actually incurred those expenses under the medical payments provision of Allstate's policy. *Id*. The court found that notwithstanding the provisions of subsections (A) to (C) of A.R.S. § 20-1072, subsection (E) of that statute allowed Lisa to accept financial responsibility for her hospital and medical expenses even though most of the expenses were paid by Partners. *Id*. at 484 ¶ 12, 19 P.3d at 625 ¶ 12.

¶6       We granted Allstate's petition for review on the question of whether the court of appeals erred in concluding that by signing the boilerplate hospital admissions form, Lisa actually incurred medical expenses within the meaning of Allstate's medical payments coverage when, under A.R.S.

---

[1] The Conditions of Admission form included a clause that read in part:

> 3.    PATIENT'S CONSENT TO SERVICES BY HOSPITAL . . . . In exchange for the Hospital providing services to the patient, the undersigned agrees to make an advance payment or deposit if requested and to pay all of the patient's Hospital charges as and when billed, except to the extent UMC agrees otherwise in a written financial agreement. UMC may bill the patient periodically before the patient is discharged . . . .

§ 20-1072(A) to (C), those expenses were to be paid by Partners and Lisa had no personal liability to UMC.

## DISCUSSION

**¶7**  In reviewing a grant of summary judgment, we view the evidence and reasonable inferences in the light most favorable to the party opposing the motion. *Wells Fargo Bank v. Arizona Laborers Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 482 ¶ 13, 38 P.3d 12, 20 ¶ 13 (2002). A trial judge properly grants summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ariz.R.Civ.P.; *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

**¶8**  Insurance policy provisions are to be construed in a manner consistent with their plain and ordinary meaning. *Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 534, 647 P.2d 1127, 1132 (1982). In determining whether there is an ambiguity that should be construed against the insurer, the language should be examined from the viewpoint of one not trained in law or the insurance business. *Id.* Finally, the policy may not be interpreted so as to defeat the reasonable expectations of the insured. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 389-90, 682 P.2d 388, 394-95 (1984).

### A.  The meaning of "actually incurred"

**¶9**  Allstate argues that Lisa did not actually incur the hospital and physician expenses that Partners eventually paid. The medical payments provision of Allstate's automobile policy reads in pertinent part: "Allstate will pay *to or on behalf of* an insured person all reasonable expenses *actually incurred by an insured person . . . .*" (Emphasis added.)

**¶10**  In Allstate's medical payments coverage provision, the phrase "actually incurred" is used in several ways. Medical expenses must have been incurred and thus cannot be speculative or anticipated future expenses; must have been incurred within one year of the accident; and must have

4

been incurred by an insured person. However, Allstate's medical payments provision does not define the words "actually incurred" for these purposes or any other.

¶11        Although conceding that *Coconino County v. Fund Administrators Ass'n, Inc.,* 149 Ariz. 427, 719 P.2d 693 (App.1986), established that Lisa need not have personally paid hospital or physician charges as a precondition to seeking payment under her medical payments coverage, Allstate contends that *Coconino County* does require that she be *liable* for such payments. It argues that under the provisions of A.R.S. § 20-1072(A) to (C), Lisa was not liable for medical expenses covered by Partners and thus could only have actually incurred those expenses not covered by Partners.

¶12        *Coconino County* involved a student who was eligible for county medical care pursuant to state and county regulations. The student was also covered under an interscholastic athletics association group insurance policy. The injured student was treated at Flagstaff Hospital and signed the hospital's standard admission agreement, assigning to the hospital the right of reimbursement from any applicable insurance policy. The administrator for the group policy refused reimbursement of the student's hospital expenses, arguing that the policy provided reimbursement only for expenses actually incurred. Because all charges were payable by Coconino County, the student had incurred no expenses.

¶13        The court of appeals rejected the administrator's argument, finding that "'[i]ncur' is generally accepted to mean 'to become liable for,' not 'to pay for.'" *Id*. at 430, 719 P.2d at 696. The court found that the hospital admission form signed by the student's legal guardian "expressly provided that [they] were the ultimate guarantors of the treatment costs" and held that "[w]hether the possibility was remote or not, the private hospital could have proceeded against [the student], the guarantor, and sought payment." Thus, the student "did actually incur expenses during his hospitalization." *Id.*

¶14        Allstate argues that under *Coconino County*, the claimant's legal obligation to pay is a *sine qua non* for its medical payments coverage to apply, given the "actually incurred" provision. However, both *Coconino County* and the court of appeals' decision in this case appear to fit within a line of cases addressing the question of whether claimants incurred expenses within the scope of medical payments provisions, notwithstanding that the expenses in question were paid by or even required

5

by law to be paid by other sources. In *American Indemnity Co. v. Olesijuk,* for instance, the court found that an insured injured on active military duty, whose hospital expenses were paid by the United States Navy, as required by statute, incurred expenses for purposes of recovery under his automobile policy's medical payments provision. 353 S.W.2d 71, 72 (Tex.Civ.App.1961); *see also Hollister v. Government Employees Ins. Co.,* 224 N.W.2d 164, 166-167 (Neb.1974), in which the court reached the same result. In both cases, the court noted that when the serviceman was treated in the hospital, an implied contract for payment was created, and later payment or reimbursement by the government did not relieve the insurer. *Hollister*, 224 N.W.2d at 166.

¶15        In *Kopp v. Home Mutual Insurance Co*., the court held that an insured whose hospital expenses were paid by a Blue Cross hospitalization plan incurred expenses and therefore was able to recover under his automobile policy's medical payments provision. 94 N.W.2d 224 (Wis. 1959). This holding has been followed by many other courts. *See, e.g.*, *Feit v. St. Paul Fire & Marine Ins. Co.,* 27 Cal.Rptr. 870, 871 (Cal.App. Dep't Super. Ct. 1962) (medical payment clause in automobile policy obliging insurer to pay expenses incurred for medical services did not limit recovery to expenses incurred by insured himself and did not preclude insured's recovery of sum medical services would have cost him but for membership in prepaid health plan); *Masaki v. Columbia Cas. Co.,* 395 P.2d 927, 931 (Haw. 1964) (insured whose treatment was covered and paid by health plan had expenses incurred on his behalf for purposes of medical payments provision of his automobile policy ); *see also Heis v. Allstate Ins. Co.,* 436 P.2d 550 (Ore. 1968) (same). Similarly, in *Shanafelt v. Allstate Insurance Co.*, the court found:

> The primary definition of the word "incur" is "to become liable for" . . . . Obviously, plaintiff became liable for her medical expenses when she accepted medical treatment. The fact that plaintiff had contracted with a health insurance company to compensate her for her medical expenses, or to pay directly the health care provider on her behalf, does not alter the fact that she was obligated to pay those expenses.

552 N.W.2d 671, 676 (Mich.App. 1996) (citation omitted).

¶16　　　　　In *Holmes v. California State Automobile Ass'n*, the California Court of Appeal held that an insured whose hospital costs were covered by Medicare benefits assigned to the hospital incurred expenses for the purpose of recovering under her automobile policy's medical payments provision. 185 Cal.Rptr. 521, 524 (Cal.App.1982); *see also Niles* v. *American Bankers Ins. Co.*, 229 So.2d 435, 439 (La.App. 1969); *Black v. American Bankers Ins. Co.,* 478 S.W.2d 434, 438 (Tex. 1972).

¶17　　　　　In *Dutta v. State Farm Insurance Co.*, an insured whose HMO paid her accident-related medical expenses was permitted to recover on her automobile policy's personal injury protection provision. 769 A.2d 948 (Md.App. 2001). The court stated:

> Clearly, an expense was incurred on petitioner's behalf. We hold that in order to fall under the scope of . . . State Farm's policy, the expense need merely be incurred — regardless of whether it is the insured, the insured's health insurer, the insured's health maintenance organization, or any other collateral source of benefits, who ultimately pays the bill.

*Id*. at 961.

¶18　　　　　In all of these cases, of course, the court noted that the insured had become legally liable for the treatments provided and that the expenses were therefore incurred. The concept of requiring the insured to become legally liable was (and is) *an* appropriate method by which to determine if the insured actually incurred expenses for medical treatment. But none of those cases involved situations in which the insured received services necessary for treatment and would have become legally liable but for a statutory immunity. The cited cases examine the issue in slightly different fashions. Some courts deemed the medical payments provision vague in its use of the word "incurred." *Feit*, 27 Cal.Rptr. at 871-72. Others found the policy ambiguous in failing to specify who must incur the expenses. *Id*. at 872; *Dutta*, 769 A.2d at 960-61. *Feit* and *Black* noted the absence of other insurance or coordinated coverage provisions. *Feit*, 27 Cal.Rptr. at 872; *Black*, 478 S.W.2d at 435. The *Kopp* court found the insured's payment of hospitalization plan premiums evidence of costs or expenses incurred by the insured. 94 N.W.2d at 225. In *Holmes*, *Shanafelt*, and *Black*, the courts found the injured insured incurred a legal obligation to pay for hospital expenses at the time the services were rendered. *Holmes*, 185 Cal.Rptr. at 524; *Shanafelt*, 552 N.W.2d at 676; *Black*, 478 S.W.2d at 437.

**¶19**        The narrow rule to be extracted from all of these cases is that "incurred" or "actually incurred" language does not bar an insured who became liable for expenses from recovery simply because "of the availability of collateral means of discharging his liability therefor so as to have relieved him of the need to pay the charges personally." *Hollister*, 224 N.W.2d at 166 (quoting *Dillione v. Deborah Hospital*, 274 A.2d 597, 600 (N.J. Super. (1971)). But in the present case, we must go a step further and decide what none of these cases had to consider — whether this rule also applies when the insured is immunized from legal liability by a statute that transfers liability for covered expenses to the collateral source of payment.

**B.        A.R.S. § 20-1072**

**¶20**        In the present case, Allstate argues that Partners — a health care services organization (HCSO) under A.R.S. § 20-1072 — was responsible for payment of Lisa's expenses; under subsections (A) and (C), Lisa had no personal liability for the medical services covered under her HMO plan and therefore no debt was actually incurred for such services. Indeed, our court of appeals has held that A.R.S. § 20-1072(A) to (C) protects an enrollee from personal liability for services covered by an HCSO. *Andrews v. Samaritan Health Sys.*, 201 Ariz. 379, 384 ¶ 21, 36 P.3d 57, 62 ¶ 21 (App. 2001). Nevertheless, *Andrews* holds than an actual "non-recourse debt" exists and is subject to the medical lien. *Id.* at 383 ¶ 14, 36 P.3d at 61 ¶ 14. Thus, the "hospitals are not . . . bringing legal action against the HCSO enrollees, as prohibited by A.R.S. § 20-1072 . . . they are [only] asserting a statutory lien against the enrollee's tort claim."[2] *Id.*; *see also LaBombard v. Samaritan Health Sys.*, 195 Ariz. 543, 991 P.2d 246 (App. 1998) (AHCCCS liens enforceable against enrollee's tort recovery even though enrollee not personally liable).

---

[2] One assumes, of course, that the existence of a statutory lien against a claimant's tort recovery for the full charges made by a provider enables that claimant to claim those charges as items of special damages. *Andrews* also holds that the lien arises and attaches automatically on treatment, without any assertion by the provider. 201 Ariz. at 383 ¶ 13, 36 P.3d at 61 ¶ 13. We note, however, that no question of laches was considered by the *Andrews* court. Nor did the court consider the adverse effect of that holding on settlement efforts. We address neither of these issues in this opinion.

**¶21** Of course, *Andrews* is also based in part on the provisions of law that permit the filing of medical liens. *See* A.R.S. § 33-931. But we think *Andrews'* basic principle is applicable to the present case. A debt to the provider is incurred when covered services are provided to the enrollee. The insured's property interest in his or her tort claim and eventual recovery is affected when and if the debt is eventually satisfied from the insured's property. Also, it is important to realize that A.R.S. § 20-1072 does not confer complete immunity from the enrollee's personal liability to the provider. The statute reads as follows:

> A. Every written contract between a health care services organization and a provider or hospital shall set forth that if the organization fails to pay for covered health care services as set forth in the enrollee's evidence of coverage or contract the enrollee is not liable to the provider or hospital for any amounts owed by the organization and the provider or hospital shall not bill or otherwise attempt to collect from the enrollee the amount owed by the organization.

> B. If the written contract between the contracting provider or hospital and the organization fails to contain the required prohibition stated in subsection A, the enrollee is not liable to the contracting provider or hospital for any amounts owed by the organization.

> C. No contracting provider or agent, trustee or assignee of the contracting provider or hospital may maintain an action at law against an enrollee to collect any amounts owed by the organization for which the enrollee is not liable to the contracting provider under subsection A.

> D. Nothing in this section impairs the right of a provider or hospital to charge, collect from, attempt to collect from or maintain an action at law against an enrollee for any of the following:

> 1. Copayment or coinsurance amounts.

> 2. Health care services not covered by the organization, including out of area claims that are not paid by an organization on behalf of an enrollee.

> 3. Health care services rendered after the termination of the contract between the health care services organization and the provider or hospital, unless the health care services were rendered during confinement in an inpatient facility and the confinement began prior to the date of termination, or unless the provider has assumed post-termination treatment obligations under the contract.

> E. Nothing in this section prohibits an enrollee from seeking health care services from a contracting or noncontracting provider or

hospital and accepting financial responsibility for these services.

> F. No provider or hospital may charge an enrollee of a health care services organization more than the amount the provider or hospital contracted to charge the enrollee pursuant to the provider's contract or hospital's contract with the health care services organization.

¶22 Thus, if *Andrews* is correct, despite the provisions of A.R.S. § 20-1072(A) to (C), an enrollee's property is or may be liable for repayment of the charges covered by the HCSO provider plus the remaining portion or the provider's usual fee or charge, plus the items covered in subsection (D).

## C. The admissions form

¶23 Lisa signed — and does not challenge her signing of — a UMC admission form in which she accepted financial responsibility for the services UMC provided her. She argues, and the court of appeals held, that in accepting financial responsibility for those services, she actually incurred expenses within the meaning of the Allstate medical payments provision and was authorized to do so by the plain language of A.R.S. § 20-1072(E). But Allstate contends that for HMO enrollees, A.R.S. § 20-1072(A) to (C) amount to a statutory immunity from payment for HMO-covered medical expenses, and that taken solely on its face, subsection (E) would eviscerate that immunity, a result the legislature could not have intended. Allstate also argues that A.R.S. § 20-1072 was enacted without indication of legislative intent to allow enrollee acceptance of financial responsibility in the manner for which the Samsels argue and the court of appeals permitted. Allstate further argues that A.R.S. § 20-1072(E) must instead be read to relate back to subsection (D)'s provisions permitting health care providers to bill enrollees for such expenses as copayment or coinsurance amounts, health care services not covered by the HMO, out-of-area claims, and health care services rendered after termination of the HMO-provider contract. Since subsections (A) to (C) provide immunity from liability for HMO-covered expenses, Allstate says Lisa could never have actually incurred them.

¶24 The court of appeals found no authority for Allstate's interpretation and held that subsection (E)'s express language allows an HMO enrollee to accept financial responsibility for services provided

by either contracting or non-contracting providers. It further held that to "ignore this explicit language would violate the rule that requires us to give words 'their natural, obvious, and ordinary meaning.'" *Samsel*, 199 Ariz. at 483 ¶ 10, 19 P.3d at 624 ¶ 10.

¶25 We do not agree with the court of appeals on this issue. A.R.S. § 20-1072 was enacted in 1988 as part of a bill addressing HMO insolvency, capitation, and regulatory issues. There is no doubt that subsections (A) to (C) are important components of Arizona's HMO regulatory scheme. They are substantially similar to the "hold harmless" provisions of the Health Maintenance Organization Model Act, promulgated by the National Association of Insurance Commissioners (NAIC) following a 1988 NAIC advisory report on HMO regulation and insolvency issues. The relevant section of the HMO Model Act reads as follows:

> 13.   Protection Against Insolvency
>
> D.   Hold Harmless
>
> (1)   Every contract between a health maintenance organization and a participating provider of health care services shall be in writing and shall set forth that in the event the health maintenance organization fails to pay for health care services as set forth in the contract, the subscriber or enrollee shall not be liable to the provider for any sums owed by the health maintenance organization.
>
> (2)   In the event that the participating provider contract has not been reduced to writing as required by this subsection or that the contract fails to contain the required prohibition, the participating provider shall not collect or attempt to collect from the subscriber or enrollee sums owed by the health maintenance organization.
>
> (3)   No participating provider, or the provider's agent, trustee or assignee, may maintain an action at law against a subscriber or enrollee to collect sums owed by the health maintenance organization.

National Association of Insurance Commissioners, *Health Maintenance Organization Model Act* (NAIC 430-1).

¶26 At least forty-seven states (and the District of Columbia) have adopted legislation on HMO capitation and insolvency. Over half adopted the NAIC Model Act; other states adopted portions or substantially modified the Model Act. *See* Jay M. Howard, *The Aftermath of HMO Insolvency:*

11

*Considerations for Providers*, 4 ANNALS HEALTH L. 87, 95-96 (1995); Craig P. Druehl, *HMO and Insurance Insolvency: The Benefits and Detriments of a Federal System*, 23 AM. J. L. & MED. 487, 498-99 (1997). At least thirty-five of these states appear to have some type of hold-harmless provision. None appears to have a provision such as Arizona's subsection (E).

¶27 In light of all of the foregoing and the text of A.R.S. § 20-1072(A) to (C), we believe the proper interpretation of the statute is that the enrollee is immunized from actions by the provider for recovery of charges for services provided and covered by the enrollee's agreement with the HMO. By the remaining subsections, however, especially subsection (E), the enrollee remains liable for co-insurance, co-payments, non-covered services, services of a non-contracting provider, and similar costs. And, as noted, the insured's property remains subject to a lien for recovery of the provider's full charges. But we believe the legislature clearly intended that the provider, not the enrollee, would run the risk of HMO non-payment for covered services and also that the enrollee was immunized from direct action for the difference between the provider's usual fees or charges and the lesser amount payable pursuant to the contract between the provider and the HMO. Thus, we disagree with the court of appeals' view that when Lisa signed UMC's form, she became directly liable for the HMO-covered services she later received. *See Samsel*, 199 Ariz. at 482-83 ¶¶ 10-11, 19 P.3d at 623-24 ¶¶ 10-11. We conclude, however, that A.R.S. § 20-1072(E) permits the provider to obtain the enrollee's enforceable promise to pay for all amounts and services not covered, including co-payments, services different from or in excess of those permitted by the HMO contract, and similar types of liabilities. And under *Andrews*, the insured's property and property interest in a tort recovery remain subject to a lien for the provider's full additional charges. Thus, as the court of appeals stated, subsection (E) "encourages providers to furnish" services by giving them "assurance" they will be paid, even though, at the time, the existence or extent of coverage may be doubtful or disputed. *Id*.

## D.     By an insured person

¶28 Given this interpretation of the statute, it is apparent that the enrollee who receives

necessary treatment from the provider incurs expenses and is or may be legally liable for some of them but not others. Some of the charges are, in fact, those for which only the provider may be liable. Thus, expenses were actually incurred and a debt, albeit non-recourse, according to *Andrews*, was created for Lisa's treatment. But Allstate's policy requires that expenses not only be actually incurred but that they be actually incurred *by an insured person*. Does this mean actually incurred for treatment of an insured person or does it mean expenses for which the insured person is directly and legally liable?

¶29        The policy does not explain and does not define the terms. The case law cited above has uniformly held that expenses are actually incurred by an insured when he or she has become legally liable for them, even when those expenses have been paid by others. *Id*. at 625-26 ¶¶ 15-18, 19 P.3d at 484-85 ¶¶ 15-18. This rule has even been applied in cases in which the entity that paid the expenses was required by law to provide the services or pay the charges and when, as a pragmatic matter, the insured would not be held legally responsible. *See Coconino County*, 149 Ariz. 427, 719 P.2d 693; *Hollister*, 224 N.W.2d 164.

¶30        The difference, of course, is that in the present case not only were the bills paid by someone else, but the insured was immunized from direct action by a provider seeking payment. But if it makes no difference who pays the bills, why should it make a difference who can be sued? Neither Allstate nor any case cited to or found by us provides an answer. In fact, no case has addressed the precise issue arising from the provisions of A.R.S. § 20-1072(A) to (C), A.R.S. § 33-931 (the medical lien statute), and policy provisions such as those before us. We are thus left to our own analysis.

## E.    Resolution

¶31        Several factors should be considered in the final analysis.

### 1.    Double recovery — windfall

¶32        Allstate argues that permitting the Samsels to recover under their medical payments provision the amount of medical expenses covered by their HMO would constitute a duplicate, windfall

recovery. We are unable to see any greater windfall to the insured when he or she recovers expenses paid by the insured's HMO as compared to recovery permitted from any other collateral source. Allstate has offered no evidence that its premiums for medical payments coverage were reduced by reason of the expectation that it would be relieved of coverage for expenses paid by HMOs for their enrollees. Thus, we see no windfall when insureds who paid for a separate coverage collect just what they have paid for. Recovery of expenses from both medical payments coverage and other sources has long been both recognized and accepted in Arizona and elsewhere. As one commentator has written:

> [T]he tendency has been to allow double recovery where collection of the first benefits has been from a completely different source, such as a hospitalization policy or Medicare . . . it might be borne in mind that it is unlikely that one would undergo serious injury merely for the purpose of recouping duplicate expenses. In addition, there are so many costs not recouped under any type of policy, but which do represent losses to the injured person, that he is unlikely to emerge with a profit in any event. If this were considered against public policy, then insurers would be forbidden to sell contracts guaranteeing payment of a fixed sum per day while one is hospitalized when it is known that the hospital expense will be paid by Blue Cross or Medicare.

8A APPLEMAN ON INSURANCE LAW & PRACTICE § 4902.7 (1997).

¶33 Arizona adopted this view long ago. *See Aetna Cas. & Surety Co. v. Scott*, 107 Ariz. 609, 611, 491 P.2d 463, 465 (App. 1971) (notwithstanding "other insurance" clause, insured was entitled to medical payment reimbursement despite duplicate recovery from second source); *Schultz v. Farmers Ins. Group,* 167 Ariz. 148, 150-51, 805 P.2d 381, 383-84 (1991).


### 2. Coordination of benefits

¶34 Unlike some other policy forms, Allstate's policy contains no clause restricting medical payment coverage to or for expenses actually paid by and not reimbursed to the insured. Allstate could have, but did not, specifically provide for reduction of medical payments benefits by a coordination of benefits or other clause limiting medical payments coverage to expenses actually paid by an insured. Allstate argues that in light of A.R.S. § 20-1072, there was no need to provide for coordination of its medical payments benefits to exclude HMO-covered expenses from its coverage.

14

**¶35**      In *Feit*, the court noted that:

> The existence of pre-paid medical, hospitalization and funeral plans is a matter of common knowledge and is certainly known to the insurance industry. If an insurer does not wish to honor claims of the type involved here it should exclude them specifically so that an insured with additional medical or hospital coverage would know that he is receiving less coverage for his premium dollar than some other insured who is without outside benefits.

27 Cal.Rptr. at 872. We agree. We note that other insurers have, in fact, coordinated their medical payments coverage and thus eliminated coverage for expenses paid by an HMO or other collateral source:

> Safeco further argues that . . . the policy it issued to Allen expressly provides that the first-party medical payments coverage is excess coverage. The "Medical Expenses Section" of the policy contains the following provision:
>
> "Other Insurance. If there is other medical, hospital benefits insurance (other than Medicare), *Health Maintenance Organization* or Preferred Provider Organization benefits available from any source against a loss covered by the Medical Expenses Section of this policy, this insurance shall be excess insurance over any other valid and collectible medical, hospital benefits insurance, *Health Maintenance Organization* or Preferred Provider Organization benefits."

*Safeco Ins. Co.* v. *Allen*, 941 P.2d 1365, 1368-69 (Kan. 1997) (emphasis in original). We also note that Allstate's policy has included such a coordination clause with respect to workers' compensation benefits but not for medical payments coverage. The medical payments coverage issue we are presented with here is certainly better resolved by specific exclusion, other insurance, or a coordination of benefits clause than by reliance on litigating the meaning of the term, undefined in the policy, "actually incurred by the insured."


### 3.      Premium differential, underwriting considerations, and reasonable expectations

**¶36**      This brings us to a final factor. One might truly inquire what the parties intended or expected with respect to the policy's application to this set of facts. The average consumer, of course, would have no inkling of the problem and no intent other than to get what he or she bought. *Darner*

15

*Motor Sales*, 140 Ariz. 383, 682 P.2d 388. As noted, Allstate did not include any language indicating its intent to exclude coverage in situations in which expenses were paid by an insured's HCSO. It presented no evidence that the limitation was in any way called to the Samsels' attention. In view of the great number of cases addressing that issue, many of them involving Allstate, it is not unreasonable to assume that had Allstate intended to exclude coverage in such a situation, it would have so stated in the policy. Nor did Allstate present any evidence from its underwriting department that given the premium charged, such was its intention. Nor did Allstate show that like some insurers, it presented its insureds with a choice for restricted coverage for a lesser premium.

¶37      Given the pervasiveness of coverage through HCSOs of one type or another, a reasonable consumer would expect that absent any indication to the contrary, medical payments coverage would apply to all expenses incurred for treatment of his or her injuries, regardless of what collateral benefits the insured may have purchased or paid for. HMO enrollees who are offered medical payments coverage limited by Allstate's interpretation are entitled to be informed that to a great extent the coverage is useless. HMO coverage, of course, is not some gift handed to an enrollee but protection an enrollee has earned and paid for by his or her labor, payroll deductions, and employer contributions.

## CONCLUSION

¶38      Thus, we see no compelling reason why expenses paid by the HMO coverage Lisa bought and paid for should be treated differently than expenses paid by a hospital or medical expense policy Lisa might have purchased or any other collateral source Lisa might have acquired by her own efforts. If Allstate had intended to limit Lisa's coverage to expenses for which she had actually become directly legally liable or even those she had actually paid, it could have so stated in the policy and made it clear to the Samsels. It has not even provided evidence that such was its own intention. We therefore conclude that the benefits Lisa received from her HMO coverage should be treated the same as benefits received from any other collateral source acquired by an insured. The undefined phrase "actually incurred by the insured" is interpreted to mean actually incurred for treatment of the insured rather than actually

16

incurred for treatment for which the insured is directly legally liable.

¶39        The court of appeals' opinion is therefore vacated, and the trial court's judgment is affirmed.

_____
ROBERT D. MYERS, Judge*


CONCURRING:


_____
STANLEY G. FELDMAN, Justice


_____
THOMAS A. ZLAKET, Justice (retired)


*Due to a vacancy on the court, pursuant to article VI, § 3, of the Arizona Constitution, the Honorable Robert D. Myers, Judge of the Superior Court in Maricopa County, was designated to sit on this case.


M c G R E G O R, Vice Chief Justice, dissenting:

¶40        The majority holds today that Lisa Samsel, an enrollee in a health care service organization (HCSO) who signed a boilerplate hospital admission form, actually incurred medical expenses, even though she can never be legally responsible for those expenses because Arizona Revised Statutes (A.R.S.) section 20-1072 guarantees her immunity.  The majority reaches its conclusion only by following a convoluted path that ignores the clear language of the contract that this action calls upon us to interpret. Because I conclude that the contract language does not permit the result reached, I respectfully dissent.

¶41        This action presents a straightforward issue.  Our decision turns on whether plaintiff Lisa Samsel, Allstate's insured, "incurred" medical expenses when she received treatment at the University Medical Center Hospital (UMC), a health care provider for Lisa's HCSO.  Allstate's medical payment

17

provision obligated it to pay "all reasonable expenses *actually incurred by an insured person*" for medical care. Hence, if Lisa incurred expenses, then Allstate's medical pay provision applies.[3]

¶42        Determining whether Lisa incurred expenses does not involve a difficult legal analysis. First, as the majority agrees, one incurs expenses if she becomes legally responsible for those expenses.[4] *Supra* ¶ 29 ("The case law cited above has uniformly held that expenses are actually incurred by an insured when he or she has become legally liable for them, even when those expenses have been paid by others."). Second, by enacting section 20-1072, the Arizona Legislature acted clearly and decisively to ensure that HCSO enrollees cannot be liable to a provider for the cost of medical services. The majority also agrees with this premise. *Supra* ¶ 27 ("[W]e believe the proper interpretation of [A.R.S. section 20-1072.A to C] is that the enrollee is immunized from actions by the provider for recovery of charges for services provided and covered by the enrollee's agreement with the HMO."). Because of the statutory immunity granted her, Lisa cannot be legally liable for the cost of care provided by UMC. Therefore, under the accepted definition of "incur," no "reasonable expenses actually incurred by the insured" exist to be paid. As a result, Allstate's insurance policy did not provide coverage.

¶43        Our analysis should end at this point. The contract of insurance means what it says. Allstate paid Lisa for expenses she actually incurred. No more is due under the terms of the policy.

¶44        Rather than enforce the clear language of the insurance contract, the majority approaches the issue presented as one of general public policy and concludes that the insurance policy provides

---

[3]        Allstate paid Lisa $315.55, the amount she incurred for expenses not covered under her HSCO agreement, as authorized by A.R.S. section 20-1072.D. This action involves only Lisa's demand that Allstate also pay the amount subject to the terms of her HSCO and for which Lisa is not liable.

[4]        Arizona, as well as most jurisdictions, defines "incur expenses" as being equivalent to becoming liable for those expenses. *See, e.g., Coconino County v. Fund Adm'rs Ass'n*, 149 Ariz. 427, 430, 719 P.2d 693, 696 (App. 1986); s*ee also Haisch v. Allstate Ins. Co.*, 197 Ariz. 606, 5 P.3d 940 (App. 2000); 12 Couch on Insurance § 180:5 (3d ed. 1998).

coverage for medical expenses for which Lisa cannot be held legally liable. The majority reaches that result not because the contract language requires it but rather because the court thinks the policy should provide coverage. I cannot concur with that approach.

¶45　　　　The majority concedes that case law "has uniformly held that expenses are actually incurred by an insured when he or she has become legally liable for them." *Supra* ¶ 29. The majority then devotes the remainder of the opinion to explaining how, if Lisa is not liable for her expenses by virtue of the statute, she could "incur" expenses under the terms of the insurance policy. The majority begins by deciding that the concept of requiring one to become legally liable for expenses before one "incurs" expenses is but *an* appropriate method by which to determine whether an insured actually incurred medical expenses.[5] *Id*. ¶ 18. The majority justifies its decision to seek other ways to define "actually incurred" by noting that none of the cases that developed the uniform rule involved a situation "in which the insured received services necessary for treatment and *would have* become legally liable *but for* a statutory immunity." *Id*. (emphasis added). In other words, none of the cases from which we derive the uniform rule involved situations in which the insured was not and could not become legally liable. That difference does more than distinguish this situation from others: the difference should determine that this insured cannot be regarded as having incurred medical expenses under the language of this policy.

¶46　　　　The majority next embarks upon an analysis notable for its departure from the contractual language at issue. First, relying upon *Andrews v. Samaritan Health System*, 201 Ariz. 379, 36 P.3d 57 (App. 2001), the majority concludes that under a situation such as that involving Lisa, "[a] debt *to the provider* is incurred when covered services are provided to the enrollee," *supra* ¶ 21 (emphasis added), because the provider can enforce its medical lien. But as *Andrews* expressly recognizes, an action

---

[5]　　　　Even if we could discern various meanings for "actually incur," it seems inconsistent to conclude, as does the majority, that "actually incur" can mean both "become legally liable" for medical expenses and "not become legally liable" for medical expenses.

19

brought pursuant to Arizona's medical lien statute is not and cannot be an action against the HCSO enrollee, because the HCSO statutes grant immunity to the enrollee against such a claim. *Andrews*, 201 Ariz. at 383 ¶ 14, 36 P.3d at 61. *Andrews'* holding simply emphasizes that *an insured* does not incur liability for the medical expenses of the provider and, therefore, provides no support for the majority's approach.

¶47        Still relying upon *Andrews*,[6] the majority seeks to bring Lisa's situation within the language of the Allstate policy by pointing out that, *if* Lisa brings a tort action, *if* she seeks recovery for medical expenses for which she was not liable, and *if* she recovers, her provider *may assert* a medical lien *against her recovery* for the debt the provider incurred. *Supra* ¶ 21. Because no party made this argument, nothing in the record tells us the number of HCSO enrollees who obtain medical treatment under their HCSO plan and later recover in a tort action, but I suspect the number as a percentage of HCSO enrollees is exceedingly small. If, as the opinion suggests, the policy language applies to Lisa only to the extent that she some day receives a recovery in a tort action, the majority's approach leaves significant questions unanswered. One is left to wonder just what the contract language means for all those enrollees who do not fit within the small category of successful tort plaintiffs: do they actually incur medical expenses also? Or does the meaning of the contract language vary according to whether the insured was negligent or the victim of negligence? And what of those who do pursue a tort remedy? Do they actually incur medical expenses at the time they receive treatment or only when and if they recover their medical expenses from a tortfeasor? If they actually incur expenses only upon recovery, can they ask their insurers to make payment before the tort action ends? If the tort action resolves through settlement, has the insured incurred medical expenses or not? Or has the insured incurred medical expenses only if the settlement

---

[6]        Although the majority relies upon *Andrews*, it stops short of approving the opinion. *Supra* ¶ 22 ("If *Andrews* is correct . . . .").

agreement separately defines and requires payment of such expenses? These questions arise by virtue of the majority's interpretation, which unnecessarily contorts the language of the contract. And, in the end, reality tells us that even if Lisa successfully pursues a tort action, she will not have actually incurred the medical expenses for which she seeks payment. Allstate's contract of insurance still will not provide coverage, for Lisa still has actually incurred no medical expenses.

¶48      The majority finally addresses the issue raised by this action by asking whether the policy's reference to medical expenses *actually incurred by an insured person* means "actually incurred for treatment of an insured person or . . . expenses for which the insured person is directly and legally liable?" *Supra* ¶ 28. Only in the world of the legally arcane could one suggest that contract language referring to expenses incurred "by an insured person" really means expenses "incurred [by the provider] for the treatment of an insured person." Certainly no reasonable policyholder could interpret his or her insurance contract as meaning that coverage promised for expenses incurred *by the insured* includes expenses incurred *by the insured's medical provider*.

¶49      The majority's failure to limit its review to the interpretation of the insurance policy involved provokes the majority to ask one final question. After noting again that the insured was immunized from liability, the opinion asks, "[b]ut . . . why should it make a difference who can be sued?" *Supra* ¶ 30. The simple and inescapable answer is that it makes a difference because the policy obligates Allstate to pay only those insureds who incurred liability. Lisa cannot be sued by the provider because she is immune from suit. The fact that Lisa can never be held liable for her medical expenses means that, *under the terms of the policy*, she never incurred those expenses. Because we are interpreting a contractual provision related to the legal liability of the insured, it matters who can be sued.

¶50      I return to my statement that this is a simple case. Lisa did not incur expenses for her treatment at UMC because she was not liable for those expenses. She received exactly those benefits

21

promised under the contract of insurance when Allstate paid those portions of her expenses for which she was liable under section 20-1072. I would reverse the decision of the superior court and vacate the opinion of the Court of Appeals.

_____

Ruth V. McGregor, Vice Chief Justice

Concurring:

_____

Charles E. Jones, Chief Justice