IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BRANDON GRUNWALD, et al.,
*Plaintiffs/Appellants,*

*v.*

SCOTTSDALE HEALTHCARE HOSPITALS, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 20-0188
FILED 8-26-2021

Appeal from the Superior Court in Maricopa County
No.  CV2018-012029, CV2019-002270
(Consolidated)
The Honorable Daniel J. Kiley, Judge

**AFFIRMED**

COUNSEL

Levenbaum Trachtenberg, Phoenix
By Geoffrey Trachtenberg, Justin Henry
*Co-Counsel for Plaintiffs/Appellants*

The Entrekin Law Firm, Phoenix
By B. Lance Entrekin
*Co-Counsel for Plaintiffs/Appellants*

Gammage & Burnham, P.L.C., Phoenix
By Cameron C. Artigue, Christopher L. Hering
*Counsel for Defendants/Appellees*

## OPINION

Judge Samuel A. Thumma delivered the opinion of the Court, in which Chief Judge Kent E. Cattani and Judge Peter B. Swann joined.

**T H U M M A**, Judge:

¶1        This appeal turns on whether plaintiffs are enrollees of a "health care services organization" under Arizona Revised Statutes (A.R.S.) § 20-1072(F) (2021).[1] Because they are not, plaintiffs' claims that health care provider liens recorded by defendants are void fails. Thus, the entry of partial final judgment for defendants is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        Plaintiffs were treated at defendant hospitals for injuries they suffered in car accidents. At the time of treatment, plaintiffs were enrolled in health insurance plans administered and underwritten by Aetna Life Insurance Company, UnitedHealthcare Insurance Company or United Healthcare Services, Inc. After the insurers paid defendants, defendants recorded health care provider liens for the difference between their customary charges and what they had received from the insurers and plaintiffs (in copays or the like). *See* A.R.S. § 33-931. Plaintiffs call this difference "balance billing." While not directly enforceable against plaintiffs, a health care provider lien may be enforced against third parties liable for plaintiffs' injuries. *See Blankenbaker v. Jonovich*, 205 Ariz. 383, 387 ¶ 17 (2003); *Maricopa Cnty. v. Barfield*, 206 Ariz. 109, 110 ¶ 1 (App. 2003). As a result, when a hospital enforces a health care provider lien, a plaintiff's recovery is reduced by the amount paid by the third party to the hospital.

¶3        Plaintiffs sued, claiming the liens are void. The hospitals, plaintiffs claim, are trying to use the liens to recover more than the amounts they agreed to accept from plaintiffs and their insurers. Plaintiffs argue this violates A.R.S. § 20-1072(F), which provides that a hospital may not charge "an enrollee of a health care services organization" more than what the

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

hospital agreed to charge the enrollee in the "hospital's contract with the health care services organization." *Id.*

¶4        The parties cross-moved for summary judgment. Finding "health care services organization" was ambiguous, the court concluded the phrase is synonymous with "health maintenance organization" (HMO). Because plaintiffs admittedly are not enrollees in an HMO, the court found Section 20-1072(F) does not apply to them, defeating plaintiffs' challenge to the liens. After entry of partial final judgment, *see* Ariz. R. Civ. P. 54(b), plaintiffs timely appealed. This court has appellate jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶5        The grant of summary judgment is reviewed de novo. *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003). Interpretation of statutes also is reviewed de novo. *Haag v. Steinle*, 227 Ariz. 212, 214 ¶ 9 (App. 2011). Summary judgment will be affirmed if it is correct for any reason. *Hawkins v. State*, 183 Ariz. 100, 103 (App. 1995).

## I.        The Statutory Basis for Defendants' Health Care Provider Liens.

¶6        An individual or entity

> that maintains and operates a health care institution or provides health care services in this state and that has been duly licensed by this state, . . . is entitled to a lien for the care and treatment . . . of an injured person. The lien shall be for the claimant's customary charges for care and treatment . . . of an injured person. A lien pursuant to this section extends to all claims of liability or indemnity, except health insurance and underinsured and uninsured motorist coverage as defined in § 20-259.01, for damages accruing to the person to whom the services are rendered, or to that person's legal representative, on account of the injuries that gave rise to the claims and that required the services.

A.R.S. § 33-931(A); *see also Dignity Health v. Farmers Ins. Co. of Az.*, 247 Ariz. 39 (App. 2019) (discussing history of A.R.S. § 33-931(A)). Health care

provider liens "are applicable to all customary charges by hospitals." A.R.S. § 33-931(C).

¶7        In this case, each of the plaintiffs' insurers agreed to pay, and each of the defendant hospitals agreed to accept, specified rates for the care that plaintiffs later received. Each of these contracts also authorized the hospitals to enforce health care provider liens for the unpaid portion of their customary charges for care after being paid the contract rate. The liens here are for the difference between the hospitals' customary charges and the amounts plaintiffs and their insurers paid the hospitals for the care the patients received.

II.    **Plaintiffs' Argument that the Liens Are Void Turns on the Definition of "Health Care Service Organization," an Ambiguous Phrase.**

¶8        Health care provider liens are authorized by Section 33-931(A), a part of A.R.S. Title 33 governing "Property." Plaintiffs, however, argue that defendants' liens are void under a statute in A.R.S. Title 20 governing "Insurance." Title 20 specifies various "types of insurers," *see* A.R.S. §§ 20-701 to -1099.02, one of which is a "Health Care Service Organization" (HCSO), *see* A.R.S. §§ 20-1051 to -1079. By statute, a hospital that treats a patient enrolled in an HCSO may not charge the patient "more than the amount the . . . hospital contracted to charge the enrollee pursuant to the . . . hospital's contract with the" HCSO. A.R.S. § 20-1072(F). Plaintiffs argue their insurers are HCSOs and that Section 20-1072(F) invalidates the liens. Plaintiffs assert that, when a hospital accepts a contracted payment for treating a patient enrolled in an HCSO, but then enforces a lien against third parties liable for plaintiffs' injuries, the hospital effectively charges the patient "more than the amount" it contracted to charge. *See Ansley v. Banner Health Network*, 248 Ariz. 143, 152 ¶ 34 (2020) (holding federal statute "prohibiting direct balance billing . . . prohibits indirect balance billing in the form of a lien that diminishes the patient's recovery from the liable third party"). Because the premise of the plaintiffs' argument is that the prohibition in Section 20-1072(F) applies, the dispositive issue is whether the plaintiffs' insurers are HCSOs.

**¶9**         The meaning of HCSO involves three statutory definitions:

- HCSO "means any person that undertakes to conduct one or more health care plans." A.R.S. § 20-1051(6).

- "'Health care plan' means any contractual arrangement whereby any [HCSO] undertakes to provide directly or to arrange for all or a portion of contractually covered health care services and to pay or make reimbursement for any remaining portion of the health care services on a prepaid basis through insurance or otherwise." A.R.S. § 20-1051(4).[2]

- "'Person' means any natural or artificial person including individuals, partnerships, associations, providers of health care, trusts, insurers, hospitals or medical services corporations or other corporations, prepaid group practice plans, foundations for medical care and health maintenance organizations." A.R.S. § 20-1051(9).

Although perhaps useful in other contexts, here, these definitions are rather circular. They provide that an HCSO is a "person" that "undertakes to conduct" a health care plan, while also providing that a health care plan is a contract "undertake[n]" by an HCSO. A.R.S. § 20-1051(4), (6). Unfortunately, in this case, they do not define HCSO in a meaningful way.

**¶10**         As noted by the superior court, the definitions also are ambiguous. *See State v. Sweet*, 143 Ariz. 266, 269 (1985) ("An ambiguity may also be found to exist where there is uncertainty as to the meaning of the terms of a statute."). Here, for example, plaintiffs argue that the phrase "arrange for health care services" means to make a network of providers available, even if in an indirect manner. The superior court, however, noted that "arrange for" could signify the exercise of control of a process or the acceptance of responsibility for an outcome. Another uncertainty noted by the superior court was how a health care plan could reimburse for health

---

[2] This definition includes a second sentence that is not relevant here: "A health care plan shall include those health care services required in this article or in any rule adopted pursuant to this article." A.R.S. § 20-1051(4).

care services (a backward-looking function) on a "prepaid basis" (a forward-looking endeavor). But that is precisely what the statute requires. *See* A.R.S. § 20-1051(4). Because "health care plan" is ambiguous, the definition of HCSO (which relies on the definition of health care plan) similarly is ambiguous. Thus, resort to secondary rules of statutory construction is appropriate. *See State ex rel. Montgomery v. Harris*, 237 Ariz. 98, 101 ¶ 12 (2014).

## III.     Under Arizona Law, HCSOs Are HMOs.

**¶11**       Defendants argue that, under Arizona law, HSCOs are HMOs. Because it is undisputed that plaintiffs' insurers are not HMOs, defendants argue Section 20-1072(F) does not apply. When statutory text is ambiguous, secondary rules of construction direct a court to consider the statutory "context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268 (1994). Applying these directives, nearly 50 years of history shows that Arizona has consistently treated HSCOs as HMOs.

### A.     Arizona's Recognition of HSCOs.

**¶12**       Until the early 1970s, "service corporations" and "disability insurers" were the only entities Arizona licensed to issue health insurance. *See* A.R.S. § 20-822 (defining various "service corporations"); § 20-253 ("disability insurance").[3] These two entities still exist. Indeed, plaintiffs had health insurance from UnitedHealthcare Insurance Company, a licensed disability insurer; insurance self-funded by United Services Automobile Association and administered by Aetna Life Insurance Company, a licensed disability and life insurer; and insurance self-funded by the State of Arizona, at times also involving other insurance administrators. *See also* A.R.S. § 20-485 to -485.12 (providing "insurance administrators" are licensed and authorized to administer insurance underwritten by others).

**¶13**       "Beginning in the late 1960's, insurers and others developed new models for health-care delivery, including HMOs. The defining feature of an HMO is receipt of a fixed fee for each patient enrolled under the terms of a contract to provide specified health care if needed." *Pegram v. Herdrich*, 530 U.S. 211, 218 (2000). The HMO assumes financial risk in providing promised benefits. If a participant stays healthy, the HMO keeps the fee; if

---

[3] Under Arizona law, "[d]isability insurance" includes "insurance against bodily injury," A.R.S. § 20-253, which in substance is "health or accident insurance," *Cont'l Life & Acc. v. Songer*, 124 Ariz. 294, 299 (App. 1979).

a participant gets "'expensively ill, the HMO is responsible for the treatment . . . .' The HMO design goes beyond the simple truism that all contracts are, in some sense, insurance against future fluctuations in price, because HMOs actually underwrite and spread risk among their participants, a feature distinctive to insurance." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 367 (2002) (quoting *Pegram*; citations omitted).

**¶14**　　　In 1973, the Federal Government enacted a federal HMO Act. *See* The Federal HMO Act of 1973 (Pub. L. 93-222, codified as 42 U.S.C. § 300e, et seq.). Also in 1973, the Arizona Legislature recognized a new, third type of entity licensed to issue health insurance called the HCSO. *See* A.R.S. §§ 20-1051 to -1079. In doing so, the Legislature drew substantially from an HMO Model Act promulgated by the National Association of Insurance Commissioners (NAIC). *Compare* A.R.S. §§ 20-1051 to -1079 *with* NAIC Model Laws, Regulations and Guidelines, 430-1 (2020); *accord Samsel v. Allstate Ins. Co.*, 204 Ariz. 1, 8-9 ¶¶ 25–26 (2002) (noting other portions of A.R.S. § 20-1072 "are substantially similar to" NAIC's HMO Model Act updated as a result of an "NAIC advisory report on HMO regulation and insolvency issues"). For reasons lost to time, however, the Legislature enacted NAIC's HMO Model Act with a twist:  in all but one section, the Legislature replaced "HMO" as used in NAIC's HMO Model Act with "HCSO."[4] In the nearly 50 years following this 1973 enactment, all three branches of Arizona's government have consistently treated HCSOs as HMOs.

### B.　　The Legislative Branch Consistently Treats HCSOs as HMOs.

**¶15**　　　In considering what became Arizona's 1973 adoption of NAIC's HMO Model Act, the Legislature explicitly explained that the bill would authorize HMOs. *Minutes of Comm. on Agric., Com. & Lab.*, S. 1st. Sess., at 1 (Ariz. Apr. 12, 1973) ("H.B. 2043 Insurance – Health Maintenance Organizations . . . this measure . . . would authorize hospital and medical services corporations to operate as health maintenance organizations (HMO's)."). In the decades following, the Legislature has consistently used this same approach. *See, e.g.*, S.B. 1134, 45th Leg., 2d Reg. Sess. (Ariz. 2002)

---

[4] The exception, A.R.S. § 20-1066, has a heading stating "Rehabilitation, liquidation or conservation of health maintenance organization," but the text states "rehabilitation, liquidation, or conservation of a health care services organization." A.R.S. § 20-1066(A); *cf.* A.R.S. § 1-212 (noting, in general, "headings to sections . . . are supplied for the purpose of convenient reference and do not constitute part of the law").

(addressing uniform accounting system for insurers, with Summary referring to HCSOs and HMOs interchangeably); H.B. 2117, 45th Leg., 1st Reg. Sess. (Ariz. 2002) (Senate Fact Sheet stating "HCSOs, commonly referred to as HMOs"); *Ariz. State Senate, Final Rev. Fact Sheet for S.B. 1330* (May 2, 2000) (HCSO, "commonly known as a[n HMO])"); H.B. 2213, 39th Leg., 2d Reg. Sess. (Ariz. 1990) (Arizona Department of Insurance (ADOI) representative testifying that HCSO bill provides protection "for enrollees in an HMO"); *Minutes of Comm. on Banking & Ins.*, H.R. 2d Sess., at 1 (Ariz. Jan. 20, 1988) (hearing on H.B. 2052 ("HMO Reform"), where ADOI representative discussed how bill would "strengthen the [HCSOs] and improve coverage for the enrollees"); *Senate Staff, Revised Fact Sheet for H.B. 2082* (Ariz. Apr. 2, 1986) (Senate Fact Sheet stating HCSOs "are more commonly known as" HCMOs); *Ariz. Legis. Council, Rsch. Div. Summary Analysis of Chapter 187 (S.B. 1165)*, S. 1st. Sess., at 1 (Ariz. May 23, 1974) (referring to HCSOs as HMOs). Plaintiffs cite no exception to this unwavering Legislative approach treating HCSOs as HMOs.

### B.    Executive Branch Treatment.

¶16      Apart from the Legislature, Arizona's Executive branch, through the ADOI, also has consistently treated HCSOs as HMOs. Along with the ADOI testimony referenced above, in 1973, the ADOI noted its understanding that the legislation was to regulate "HMO type prepaid plan[s]." *See* ADOI, Activity Report Ending Mar. 30, 1973 (noting meeting to discuss "a separate article in Title 20 for the regulation of [HMOs] to be known as" HCSOs). ADOI regulations define HMO to "mean a[n HCSO] as defined in A.R.S. § 20-1051([6])."[5] Ariz. Admin. Code R20-6-1101(B)(1)(c). In discussing the HSCO regulatory scheme, ADOI has repeatedly stated that HCSOs are HMOs. *See, e.g.*, ADOI Regulatory Bulletin 2018-02, July 12, 2018, 4 ("Includes health care service organizations (HCSO's, a.k.a. HMO's) as member insurers"); ADOI Regulatory Bulletin 2006-2, Jan. 20, 2006, at 9 (describing types of insurers, stating "[h]ealth care services organizations (HMOs) governed by ARS § 20-1051 et seq."); ADOI Regulatory Bulletin 2003-8, July 1, 2003, at 8 ( "health care services organizations (HMOs)"); ADOI Regulatory Bulletin 2001-6, June 15, 2001, at 1 ("The regulatory scheme governing health care service organizations (HCSOs or HMOs) in Arizona was enacted in the 1970s."); ADOI Circular Letter No. 2000-6, 2000 WL 35356812, * 19 (May 17, 2000) (referencing "[r]egulatory oversight of health care services organizations (HMOs)"); ADOI Circular Letter 2000-14, 2000 WL 35356815 (Nov. 9, 2000) (same). ADOI's most recent Annual

---

[5] The numbering of A.R.S. § 20-1051 was modified effective August 25, 2020. The statutory text, however, remains the same.

Report confirms that HCSOs and HMOs are the same, adding that the insurers involved here are not HSCOs but are "Life and Disability Insurers."

### C.     Judicial Branch Treatment.

¶17          Like the Legislature and the Executive branches, courts applying Arizona law have stated, although in passing, that HMOs and HCSOs are the same. *See, e.g.*, *Samsel v. Allstate Ins. Co.*, 204 Ariz. 1, 9 ¶ 27 (2002) ("In light of all of the foregoing and the text of A.R.S. § 20-1072(A) to (C) [referencing HCSO], we believe the proper interpretation of the statute is that the enrollee is immunized from actions by the provider for recovery of charges for services provided and covered by the enrollee's agreement with the HMO.") *vacating* 199 Ariz. 480, 481 ¶ 1 (App. 2001) (noting medical "expenses were covered by [plaintiff's] health care services organization (HMO)"); *Haisch v. Allstate Ins. Co.*, 197 Ariz. 606, 607 ¶ 2 (App. 2000) (stating plaintiff was a member of "a Health Care Service Organization, or 'HMO'"); *accord In re Family Health Servs., Inc.*, 101 B.R. 628, 630 n.1 & 633 (C.D. Cal. Bankr. 1989) ("Arizona statutes designate [HMOs] as . . . HCSOs. In order to achieve consistency between this and other opinions, the organizations will be referred to throughout as HMOs;" also noting Arizona Attorney General opining HCSOs are "the Arizona equivalent of HMOs") (citing Ariz. Att'y Gen. Op. 179-20 (1979)).

### D.     Avoiding Superfluous and Duplicative Construction.

¶18          The court is also persuaded that accepting plaintiffs' view of Section 20-1072(F) would render portions of Title 20 superfluous and duplicative. Although plaintiffs argue, in essence, that a health insurance plan offered by a licensed disability insurer or a service corporation could be an HCSO, the statutes recognize that the three types of entities are distinct. Various examples prove the point.

¶19          Coverage of prescription eyedrops is addressed by A.R.S. § 20-841.11 (service corporations), § 20-1057.16 (HCSOs) and § 20-1376.08 (disability insurers). As another example, coverage of telemedicine is governed by A.R.S. § 20-841.09 (service corporations), § 20-1057.13 (HCSOs) and § 20-1376.05 (disability insurers). Accepting plaintiffs' argument that HCSOs include disability insurers (like the insurers involved here) and service organizations would mean these parallel statutes are superfluous and duplicative, something this court will not do. *See In re Estate of Zaritsky*, 198 Ariz. 599, 603 (App. 2000) (noting courts interpret statutes to avoid rendering language "surplusage, . . . void, inert, redundant, or trivial," or

causing "an absurd result") (citations omitted); *see also Wyatt v. Wehmueller*, 145 Ariz. 374, 377 (1991) (directing courts to read the statute "as a whole, looking to its subject matter, effects and consequences, reason, and spirit") (citation omitted).

**¶20**        These siloed statutory approaches make it even more significant that the Legislature did not enact a statute parallel to A.R.S. § 20-1072(F) to bar a hospital that has agreed to accept payment from a disability insurer or a service corporation from pursuing balance billing in the form of health care provider liens. This statutory silence shows the Legislature limited § 20-1072(F) to HCSOs, or, put differently, to HMOs. That distinction also recognizes that only an HMO (not a disability insurer or service corporation) agrees to bear the risk that the contracted amounts for services might not cover the costs of providing care. Had the Legislature wanted § 20-1072(F) to also apply to insurance issued by disability insurers or service corporations, it would have enacted such provisions. The Legislature, however, has not done so.

**¶21**        Decades-long, consistent approaches by all three branches of Arizona's government treat HCSOs as HMOs under Arizona law. Plaintiffs have offered no basis, under Section 20-1072(F), to treat HMOs and HCSOs differently as applicable here. Similarly, the contracts between hospitals and the insurers (authorizing the hospitals to enforce health care provider liens that would be barred by Section 20-1072(F) if the insurers were HCSOs) further suggests that those parties did not treat the insurers as HCSOs. Thus, the court adopts this long-standing, consistent view that HSCOs are HMOs under Arizona law.[6]

---

[6] Given this conclusion, the court need not address defendants' argument that a conclusion to the contrary would constitute a finding that Arizona's entire health insurance industry is out of compliance with Arizona law.

**CONCLUSION**

**¶22** Because HSCOs are HMOs under Arizona law, and because plaintiffs are not enrolled in HMOs, they are not enrolled in HCSOs. As a result, Section 20-1072(F) does not apply, meaning plaintiffs' claim that the statute bars defendants from filing health care provider liens for unpaid charges fails. Accordingly, the partial final judgment is affirmed. Plaintiffs' requests for attorneys' fees under A.R.S. § 33-934, and taxable costs on appeal, are denied. Defendants are awarded their taxable costs incurred on appeal contingent upon their compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA