IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOHN I. RIGOLI and DELPHINE D. RIGOLI, husband and wife; JULIAN
BLUM, and FLEETA BLUM, husband and wife; DENNIS FARRELL and
ALBERTA FARRELL, husband and wife; ZENEPE KOCI; PHUONG
PHAN and HOANG PHAN, husband and wife; MT & TE NELSON, LTD.
aka MT NELSON, LTD, an Iowa corporation; KEVIN DANEY and
BARBARA DANEY, husband and wife; JOSEPH CHARTERS and MARY
CHARTERS, husband and wife; KNOT OAKS HOLDING, LLC, a
Delaware limited liability company; JOHN CARPENTER,
*Plaintiffs/ Appellees,*

*v.*

44 MONROE MARKETING, LLC, a Delaware limited liability company,
*Defendant/Appellant.*

No. 1 CA-CV 12-0587
FILED 10-09-2014

Appeal from the Superior Court in Maricopa County
No. CV2010-016766
The Honorable George H. Foster, Judge

**AFFIRMED**

COUNSEL

Moyes Sellers & Hendricks, Phoenix
By Keith L. Hendricks, Stephen Brower
*Counsel for Plaintiffs/Appellees*

Dickinson Wright PLLC, Phoenix
By Michael S. Rubin, Todd A. Baxter
*Counsel for Defendant/Appellant*

---

## OPINION

Judge John C. Gemmill delivered the opinion of the Court, in which Presiding Judge Maurice Portley and Judge Kent E. Cattani joined.

---

**G E M M I L L,** Judge:

¶1          This appeal arises from an unsuccessful project to construct and sell condominium units in Phoenix.  Defendant/Appellant 44 Monroe Marketing, LLC ("Marketing") challenges the summary judgment granted to Plaintiffs/Appellees – condominium purchasers – that recognized the validity and priority of Plaintiffs' vendees' liens.  Several questions are presented.  Did Plaintiffs acquire equitable vendees' liens — to secure the return of their earnest money and down payments in the event of default — by entering into purchase contracts with the developer-seller and making initial payments on the contracts?  Did these vendees' liens arise at the time of payment of money to the developer?  Are the vendees' liens superior in priority to the interests of a lender who thereafter provided a construction loan to the developer?  These questions are answered in the affirmative, and the trial court's judgment in favor of Plaintiffs is therefore affirmed.

## FACTS[1]

¶2          44 Monroe, LLC ("Developer") wanted to build a condominium project at 44 West Monroe Street ("the Property").[2]  During 2005 and 2006, "Plaintiffs" entered into purchase contracts with Developer and made corresponding down payments for individual units.  All

---

[1] "We view the evidence in the light most favorable to the party opposing the motion for summary judgment and construe all inferences in favor of that party." *BAC Home Loans Servicing, LP v. Semper Invs. L.L.C.*, 230 Ariz. 587, 589, ¶ 2, 277 P.3d 784, 786 (App. 2012).  We review de novo a trial court's summary judgment ruling.  *Strojnik v. Gen. Ins. Co. of Am.*, 201 Ariz. 430, 433, ¶ 10, 36 P.3d 1200, 1203 (App. 2001).

[2]  The entity known as 44 Monroe Marketing, LLC, referred to as "Marketing" herein, is separate from and unrelated to the entity known as 44 Monroe, LLC, referred to as "Developer" herein.

Plaintiffs had entered into binding purchase contracts and paid down payments before September 2006.

¶3            To obtain construction financing, Developer contacted Corus Bank, N.A.  In April 2006, Corus Bank sent Developer a loan commitment letter that imposed a requirement that Developer obtain valid sales contracts for at least 100 units with a gross sales amount of $66,500,000 before Corus Bank would fund a construction loan.  The letter also required Developer to have at least $4,406,000 of earnest money deposits from valid sales contracts on deposit with Corus Bank and available to fund project costs before Corus Bank would fund the construction loan.  In addition to requiring all sales contracts to be executed on a form pre-approved by Corus Bank, the commitment letter further directed that the sales contracts inform the purchaser that earnest money deposits would be used for costs of construction.

¶4            Corus Bank then loaned Developer $86,829,000 for construction and secured the loan with a deed of trust against the Property ("Corus Bank deed of trust") that was recorded on September 1, 2006.

¶5            Developer defaulted on the construction loan in March 2009 when it failed to pay the balance at the loan's maturity date.  By September 2009, Corus Bank was closed and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver.  The FDIC assigned the Corus Bank deed of trust and other loan documents to Corus Construction Venture, LLC ("Corus Construction").  The assignment was recorded in December 2009.  Five months later, the Property was sold at a trustee's sale at which Corus Construction was the highest bidder.  Corus Construction made a credit bid toward the obligations secured by the Corus Bank deed of trust and directed that title to the Property be issued to Marketing.  The trustee's deed conveying the Property to Marketing was recorded on June 1, 2010.

¶6            Plaintiffs then filed this action to quiet title and foreclose against Marketing, asserting purchasers' (vendees') lien rights in the Property.  Marketing filed an answer and counterclaim asserting that Plaintiffs' equitable lien interests were invalid because federal law

controlled and Marketing, as a successor to the FDIC, was entitled to the benefit of the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e).[3]

¶7        Marketing filed a motion for summary judgment arguing that federal law controlled and precluded Plaintiffs' interests in the Property. Plaintiffs responded that they had vested interests in the Property through vendees' liens and that the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e) did not apply to bar their claims. After briefing, the trial court denied Marketing's motion for summary judgment, finding that Plaintiffs had valid vendees' liens and federal law did not bar Plaintiffs' claims.

¶8        In a subsequent motion for summary judgment, Plaintiffs argued that their equitable vendees' liens had priority over Marketing's interest in the Property. Plaintiffs asserted that their interests had priority over the Corus Bank deed of trust because the bank had notice, before making the construction loan, of Plaintiffs' purchase contracts and deposits on the Property. Thus, according to Plaintiffs, "the priority of the construction loan was subject to Plaintiffs' vendee liens and [was] not extinguished by [Corus Bank's] credit bid at the trustee's sale." At oral argument before the trial court, Plaintiffs argued that Corus Bank was at least on inquiry notice of the purchase contracts. The trial court agreed and found that Corus Bank "not only was on notice, but had required pre-sales of the various units resulting in payments by the various Plaintiffs that result[ed] in the vendees' liens."

¶9        In February 2012, the trial court addressed a then recently filed motion for summary judgment by Marketing on the issues of waiver and lien priority. In addition to finding Marketing's motion untimely, the trial court rejected Marketing's arguments, explaining that "nothing in the record indicates any fact supporting the notion that the Plaintiffs[ ] intended to subordinate their lien to any lender or to waive[ ] any right in this regard."

---

[3] In *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 460–61 (1942), the United States Supreme Court held that the receiver of a failed, FDIC-secured bank cannot be bound by a secret side agreement in which the bank allegedly promised not to collect a debt owed by a borrower. Section 1823(e) was enacted to codify the *D'Oench, Duhme* doctrine. *See FDIC. v. Adams*, 187 Ariz. 585, 588, 931 P.2d 1095, 1098 (App. 1996).

¶10　　　　The court entered final judgment, confirming that Plaintiffs have vendees' liens against the Property, dismissing with prejudice Marketing's counterclaims, and awarding Plaintiffs attorney fees and costs against Marketing.

## ANALYSIS

¶11　　　　Marketing presents four arguments on appeal. First, Marketing asserts that Plaintiffs waived their right to acquire vendees' liens because the purchase contracts provided the "sole and exclusive remedies" available to Plaintiffs. Second, Marketing contends that Corus Bank has a superior security interest because it did not have knowledge of Plaintiffs' vendees' liens at the time it funded the construction loan. Third, Marketing posits that the FDIC's interest in the Property is superior to Plaintiffs' because the FDIC did not have knowledge of the vendees' liens when it was appointed receiver of Corus Bank, in accordance with the protection of the *D'Oench, Duhme* doctrine. Fourth, Marketing argues that it is protected as the FDIC's successor in interest and as such, benefits as a Federal Holder in Due Course ("FHDC").

## No Contractual Waiver of Vendees' Liens

¶12　　　　Marketing argues that Plaintiffs cannot assert vendees' liens as a remedy for the breach of their purchase contracts because the contracts precluded the availability of vendees' liens. To establish Plaintiffs' alleged waivers of their lien rights, Marketing points to the following language in the purchase contracts:

> Buyer, as its sole and exclusive remedies, may either (i) terminate this Contract and receive a refund of the Earnest Money and all other amounts paid to Seller under this Contract, or (ii) if construction of the Unit is complete but Seller refuses to complete the Closing and convey title to Buyer, then . . . Buyer may seek to enforce specific performance of this Contract . . . . Buyer shall have no remedies except as expressly set forth in the preceding sentence and regardless of the legal theory underlying any claim by Buyer against Seller (whether such legal theory is based on principle of contract law, negligence, or otherwise).

Our supreme court has defined waiver as the "express, voluntary, intentional relinquishment of a known right or such conduct as warrants an inference of such an intentional relinquishment." *Am. Cont'l Life Ins. Co. v.*

*Ranier Constr. Co., Inc.*, 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980); *see also City of Tucson v. Koerber*, 82 Ariz. 347, 356, 313 P.2d 411, 418 (1957). A "clear showing of an intent to waive" is required in order to find that a waiver of contractual rights has occurred. *Societe Jean Nicolas et Fils v. Mousseux*, 123 Ariz. 59, 61, 597 P.2d 541, 543 (1979); *Goglia v. Bodnar*, 156 Ariz. 12, 19, 749 P.2d 921, 928 (App. 1987). Because vendees' liens arise in equity and not from express language in real property purchase contracts, *see infra* ¶¶ 18–21, contractual waivers of vendees' lien rights must be stated very clearly.[4]

**¶13** Applying these principles, we hold that contractual language alleged to establish waiver must manifest a clear and unequivocal intent to waive the right to vendees' liens. *See Societe Jean Nicolas et Fils*, 123 Ariz. at 61, 597 P.2d at 543; *Pac. Lumber & Timber Co. v. Dailey*, 111 P. 869, 870 (Wash. 1910) ("The evidence showing an agreement to waive a lien must be clear, certain, and unequivocal."); *see also Mathis v. DCR Mortgage III Sub I, LLC*, 389 S.W.3d 494, 507–08 (Tex. App. 2012) (explaining that a waiver of rights in a promissory note or deed of trust must be "clear and unequivocal"); *Stewart v. Leasure*, 55 P.2d 917, 919 (Cal. Ct. App. 1936) (ruling that waiver of a right in a real estate contract must be "clear, unequivocal, and decisive"). We further conclude that the language of Plaintiffs' purchase contracts is not sufficiently clear and unequivocal to waive Plaintiffs' rights to assert their vendees' liens. *See id.*[5]

**¶14** Marketing also relies on the loan commitment letter from Corus Bank, which expressly required the purchase contracts to state that the purchaser "has no lien rights with respect to the Project and all of purchaser's rights under the contract are subordinate to the Bank's

---

[4] Indeed, at least one court has concluded that because a vendee's lien is an equitable remedy, a court may still determine that the lien exists in the interest of justice even when the contract language limits the extent of available remedies. *See In re Laketown Wharf Mktg. Corp.*, 433 B.R. 401, 415 (Bankr. N.D. Fl. 2010) (explaining that despite contract language disclaiming lien rights, the purchasers could still "assert an equitable vendee's lien in order to aid recovery" of their deposits for "the purpose of justice"); *see also Glad Tidings Church of Am v. Hinkley*, 71 Ariz. 306, 314, 226 P.2d 1016, 1022 (explaining that equitable remedies are dependent on the discretion of the court).

[5] Because we have resolved this issue for the reasons explained herein, we do not reach the question whether Marketing, which was not a party to the purchase agreements, is entitled to assert the benefit of language in the agreements.

mortgage and other security interests." This particular language would likely be sufficient to waive Plaintiffs' vendees' liens – if Plaintiffs had agreed to such language – but we need not reach that issue because the language is not part of any contracts signed by Plaintiffs. The language was not included in Plaintiffs' purchase contracts with Developer, which preceded the Corus Bank construction loan to Developer. The loan commitment letter and related construction loan documents govern the relationship between Developer and Corus Bank, and Plaintiffs are not parties thereto. Marketing acknowledges that "Corus Bank had no contractual relationship with the [Plaintiffs][.]" Accordingly, Plaintiffs' pre-existing rights cannot be limited by the language in the subsequently executed contractual documents between Developer and Corus Bank. *See Samsel v. Allstate Ins. Co.*, 199 Ariz. 480, 484, ¶ 14, 19 P.3d 621, 625 (App. 2001) (explaining that a "connection or relationship" between parties must exist "before one may seek to enforce or defeat the contract."), *vacated on other grounds by Samsel v. Allstate Ins. Co.,* 204 Ariz. 1, 59 P.3d 281 (2002); *Stratton v. Inspiration Consol. Copper Co.*, 140 Ariz 528, 530–31, 683 P.2d 327, 329–30 (App. 1984) (holding that a subcontractor could not enforce the benefit of an owner's agreement with a prime contractor "[s]ince there was no privity of contract between" the owner and the subcontractor); *Keith Equip. Co. v. Casa Grande Cotton Finance Co.*, 187 Ariz. 259, 261, 928 P.2d 683, 685 (App. 1996) (holding that a finance company which agreed to finance a farming operation was not obligated to a contract made between the farming operation and a third party because "it was not party to the agreement"); *see also* 17B C.J.S. *Contracts* § 836 ("Generally only a party to a contract . . . may enforce it.").

¶15        For these reasons, we agree with the trial court's conclusions that by signing the purchase contracts, Plaintiffs did not waive their rights to assert the existence and protection of vendees' liens and did not subordinate their liens to the Corus Bank deed of trust.

## Plaintiffs' Vendees' Liens Have
## Priority Over the Corus Bank Deed of Trust

¶16        Marketing next argues that Plaintiffs' vendees' liens were inferior to Corus Bank's interest because Corus Bank did not have notice of Plaintiffs' interests in the Property when it funded the construction loan.

¶17        Generally, a vendee of realty acquires an equitable interest in property and a vendee's lien is created when the purchaser enters into a binding written contract and renders payment. *Tucson Fed. Sav. & Loan Ass'n v. Sundell*, 106 Ariz. 137, 141, 472 P.2d 6, 10 (1970) ("When [plaintiff]

paid $25 down and entered into a binding written contract to purchase the property she acquired an interest in the land.").[6] A purchaser is entitled to an implied vendee's lien for "advances made on the purchase price, if through the fault of the vendor the sale is not finally consummated." *Pima Farms*, 32 Ariz. at 343, 258 P. at 304–05 (1927); *see also Sundell*, 106 Ariz. at 141, 472 P.2d at 10.

¶18 Plaintiffs entered into binding contracts to purchase the condominium units on the Property between April 2005 and September 2006. In conjunction with those contracts, Plaintiffs paid earnest money payments and down payments. Thus, Plaintiffs' vendees' liens arose when they put money down after entering binding contracts to purchase, and the liens remain so long as there exists a right to recover the payments. *See* 92A C.J.S. *Vendor & Purchaser* § 723 ("a vendee's lien is not created by express terms of contract; rather, it is a right that is recognized for purposes of doing justice and may arise even if [the] contract limits [the] purchaser to a return of its deposit").

¶19 The holder of a vendee's lien is protected against a purchaser with notice of the facts upon which the equitable right to the lien depends. *Murphey v. Brown*, 12 Ariz. 268, 277–78, 100 P. 801, 805 (1909). Thus, a vendee's lien is superior to subsequent rights created in a person or entity with actual or inquiry notice. *Sundell*, 106 Ariz. at 141, 472 P.2d at 10. As a condition of funding the construction loan to Developer, Corus Bank required Developer to raise significant revenues from down payments on the purchase contracts. From that, the trial court found that Corus Bank was on notice that individuals would be entering into purchase contracts and paying earnest money deposits, and thus was on notice that individuals would be acquiring vendee's liens. We agree. *See id.* at 142, 472 P.2d at 11 (holding that lender was on notice of buyer's interest in the property

---

[6] In *Pima Farms Co. v. Elliot*, 32 Ariz. 342, 347, 258 P. 304, 306 (1927), our supreme court stated that "[t]he lien comes into existence when the vendor defaults in the performance of his part of the contract[.]" This language from *Pima Farms* in 1927 appears inconsistent with the clear holding of *Sundell* in 1970 that a vendees' lien is created when the purchaser enters into a binding written contract and renders payment. The *Pima Farms* language may be dicta, and, in any event, the issue has been clarified by the more recent Arizona Supreme Court case of *Sundell*, which we follow herein. *See Bailey v. Myers*, 206 Ariz. 224, 227 n.1, ¶ 14, 76 P.3d 898, 901 n.1 (App. 2003) (explaining that, under analogous circumstances, the court of appeals will follow the more recent supreme court opinion).

because "prior to granting the construction loan, and prior to disbursing any money under that loan," the lender had a copy of buyer's purchase contracts).

¶20 Because Plaintiffs' vendees' liens arose when they put money down as required by their respective purchase agreements in 2005 and 2006, prior to the recording of the Corus Bank deed of trust on September 1, 2006, and because Corus Bank had at least inquiry notice, if not actual notice, of those purchase agreements and payments by Plaintiffs, the vendees' liens have priority over Marketing's position and may be enforced against the Property.

### Marketing is not Protected by the *D'Oench, Duhme* Doctrine or 12 U.S.C. § 1823(e)

¶21 Marketing characterizes Plaintiffs' claims as arising from unwritten agreements that are barred in actions against the FDIC by the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e).

¶22 In *D'Oench, Duhme*, the Supreme Court rejected a borrower's assertion that an undisclosed agreement with the bank had given the borrower greater rights than were reflected in the loan documents. 315 U.S. at 460–61. The Court noted that the side agreement "was designed to deceive the creditors or the public authority or would tend to have that effect." *Id.* at 460. Under *D'Oench, Duhme*, borrowers are thus prevented from asserting defenses based on undisclosed agreements in order to "protect the FDIC from misrepresentations and secret agreements which might result in [the FDIC] incorrectly assessing the value of bank holdings for institutions which it insures, makes loans, or acquires in its corporate capacity." *Bateman v. FDIC*, 970 F.2d 924, 926 (1st Cir. 1992).

¶23 After the Supreme Court's decision in *D'Oench, Duhme*, Congress enacted 12 U.S.C. § 1823(e), which essentially codifies the Supreme Court's holding:

> No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it under this section . . . either as security for a loan or by purchase . . . shall be valid against the Corporation unless such agreement:
>
> (A) is in writing,

(B) was executed by the [bank] and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the [bank],

(C) was approved by the board of directors of the [bank] or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(D) has been, continuously, from the time of its execution, an official record of the [bank].

¶24 The *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e) are generally applied to protect the FDIC from a borrower's claims or defenses based on side agreements between the borrower and the failed bank. *See, e.g.*, *FDIC v. Kasal*, 913 F.2d 487, 492 (8th Cir. 1990) ("We hold that § 1823(e) and the common law doctrine of *D'Oench, Duhme* bar appellants from raising any aspect of their secret unwritten side agreements with the Bank as a defense to the FDIC's claims on the notes."); *see also FDIC v. Adams*, 187 Ariz. 585, 590, 931 P.2d 1095, 1100 (App. 1996) ("The purpose of the doctrine is to enable the FDIC to enforce agreements between failed banks and their borrowers in strict accordance with the terms of the loan documents.").

¶25 When Corus Bank was closed in 2009, the FDIC was appointed as receiver. The FDIC assigned the Corus Bank deed of trust to Corus Construction. The trustee sold the Property at public auction in May 2010 to Corus Construction, which directed that title be vested in Marketing. Marketing is thus entitled to the same protections the FDIC would receive if unrecorded side agreements existed between Corus Bank and Developer. *See Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 754 (5th Cir. 1990).

¶26 We acknowledge the force of *D'Oench, Duhme* and § 1823(e) to protect the FDIC from claims arising from agreements that are "not documented in the institution's records," but we conclude that neither the doctrine nor the statute bars Plaintiffs' claims in this case because the vendees' liens at issue are not side agreements between Developer (the debtor) and Corus Bank. Although Marketing argues that the doctrine has been so expanded that it should apply to bar any claim brought against an interest of the FDIC or its assignees that is based on an unrecorded side agreement, for *D'Oench, Duhme* to apply, there must be a side agreement at issue between a debtor and the bank. *See Adams*, 187 Ariz. at 589–90, 931 P.2d at 1099-1100. That is not the case here. Plaintiffs' lien rights arise out

of equity, not out of any side agreement with Developer or with Corus Bank. The *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e) therefore do not apply.

## Marketing Waived its Federal Holder in Due Course Argument

¶27        Marketing further argues that the FDIC's interest is superior to Plaintiffs' unrecorded vendees' liens because the FDIC did not have notice of Plaintiffs' liens. Marketing asserts the FDIC is granted a federal holder-in-due-course ("FHDC") status with regard to notes it acquires through purchase and assumption transactions. *See FDIC v. Wood*, 758 F.2d 156, 161 (6th Cir. 1985) ("[W]hen the FDIC in its corporate capacity, as part of a purchase and assumption transaction, acquires a note in good faith, for value, and without actual knowledge of any defense against the note, it takes the note free of all defenses that would not prevail against a holder in due course."); *see also Bell & Murphy & Associates, Inc.*, 894 F.2d at 754; *Gunter v. Hutcheson,* 674 F.2d 862, 867 (11th Cir. 1982), *cert. denied,* 459 U.S. 826, *overruled on other grounds, Langley v. FDIC*, 484 U.S. 86 (1987).

¶28        We need not decide this substantive issue, however, because Marketing did not assert before the trial court that it is protected as an FHDC. Issues and arguments raised for the first time on appeal are untimely and usually deemed waived. *See Pro Finish USA, Ltd. v. Johnson*, 204 Ariz. 257, 267, ¶ 41, 63 P.3d 288, 298 (App. 2003). This court has stated that "[o]n appeal from summary judgment, the appellant may not advance new theories or raise new issues to secure a reversal." *Lansford v. Harris*, 174 Ariz. 413, 419, 850 P.2d 126, 132 (App. 1992).

¶29        Marketing nevertheless contends that it should not be barred from bringing this claim on appeal. Marketing argues that by relying on a case at the trial court that contained a discussion of FHDC, it has in essence raised the FHDC issue. Although Marketing did rely on a case that mentions the FHDC doctrine, it cited the case to support a different contention.

¶30        Marketing further asserts that even if it has not expressly raised an issue, we should exercise our discretion to address the new argument on appeal. *See City of Sierra Vista v. Sierra Vista Wards Sys. Voting Project*, 229 Ariz. 519, 524 n.8, P.3d 297, 302 n.8 (App. 2012) (court may exercise discretion to consider issues not sufficiently raised when the issues involve purely questions of law). We decline to exercise our discretion in favor of addressing Marketing's substantive argument here.

¶31 Resolution of the FHDC issue may have required fact-finding by the trial court, and no persuasive reason has been provided for Marketing not raising the argument in the trial court. Merely raising a related issue using a case that mentions FHDC protection is not tantamount to actually raising the argument. Because Marketing did not assert the FHDC argument in the trial court, we decline to review the argument on appeal.

**Attorney Fees**

¶32 Both sides have requested an award of attorney fees under Arizona Revised Statutes ("A.R.S.") section 12-341.01(A), which provides that "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees[.]" Because the parties agree that § 12-341.01(A) is applicable, we will apply the statute in favor of Plaintiffs, the successful parties on appeal. Marketing is not the successful party on appeal and is not entitled to fees under § 12-341.01(A). Marketing also requested attorney fees and costs pursuant to A.R.S. § 33-420, addressing the filing of liens that are forged, groundless, false, or otherwise invalid. That statute is not applicable.

¶33 Accordingly, in our discretion under A.R.S. § 12-341.01(A), we will award Plaintiffs an amount of reasonable attorney fees upon their compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

¶34 We affirm the trial court's judgment establishing the validity and priority of Plaintiffs' vendees' liens over Marketing's subsequently created interest in the property.



Ruth A. Willingham · Clerk of the Court
FILED: gsh