IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

—————————————

ADVANCED PROPERTY TAX LIENS, INC.,
AN ARIZONA CORPORATION,
*Plaintiff/Appellant*,

*v.*

JORGE OTHON AND SPOUSE OF JORGE OTHON,
IF ANY IN SEPTEMBER 2017,
*Defendants/Appellees*.

No. 2 CA-CV 2021-0001
Filed October 25, 2021

—————————————

Appeal from the Superior Court in Santa Cruz County
No. S1200CV201900192
The Honorable Denneen L. Peterson, Judge Pro Tempore

**AFFIRMED**

—————————————

COUNSEL

Barry Becker P.C., Phoenix
By Barry C. Becker
*Counsel for Plaintiff/Appellant*

Law Offices of Gregory L. Droeger, Nogales
By Gregory L. Droeger
*Counsel for Defendants/Appellees*

**OPINION**

Judge Eckerstrom authored the opinion of the Court, in which Presiding Judge Espinosa and Vice Chief Judge Staring concurred.

E C K E R S T R O M, Judge:

¶1        In this quiet title action, Advanced Property Tax Liens, Inc. ("APTL") appeals from the trial court's rulings in favor of Jorge Othon on cross-motions for summary judgment.  For the reasons that follow, we affirm.

**Factual and Procedural Background**

¶2        On appeal from the entry of summary judgment, we view the facts in the light most favorable to the party against whom summary judgment was granted, here APTL.  *Delo v. GMAC Mortg., L.L.C.*, 232 Ariz. 133, ¶ 2 (App. 2013).  The material facts in this matter are undisputed.  At issue is a parcel of commercial warehouse property located in Nogales, Arizona (the "Property"), formerly owned by Victalina Carreon.

¶3        In late 2014 or early 2015, Othon entered into an oral agreement with Carreon to purchase the Property for $450,000, and began making payments toward that purchase.  The agreement was never documented, and Othon paid Carreon with money on which he had avoided paying taxes.  Both Carreon and Othon knew the Property was encumbered by delinquent property taxes.  Because they mutually understood that payment of those taxes would eventually fall to Othon, they accounted for the encumbrance by deducting the outstanding taxes from the purchase price.

¶4        When Carreon and Othon entered into their agreement, the Property had been vacant.  Immediately after Othon made his first payment, he occupied the Property.  He rented the warehouse space to three companies that operated there, two owned by him and one owned by his brother.  The Property was, at all relevant times, "a fully occupied commercial property" that was open during normal business hours.

¶5        In February 2015, APTL purchased a tax lien on the Property at a Santa Cruz County tax lien auction, paying the unpaid property taxes

and accrued interest. At some point afterward, Othon attempted to purchase APTL's tax lien.[1] But APTL refused to sell the tax lien to him.

¶6 In September 2017, after the purchase price had been paid in full, Carreon executed a deed conveying the Property to Othon. The deed was properly notarized and manifested Carreon's intent to convey the Property to Othon. However, Othon did not record the deed with the Santa Cruz County Recorder. Nor did he notify the Santa Cruz County Treasurer or Assessor of his ownership of the Property or provide an appropriate mailing address at which he could be reached with tax bills or valuation notices. When he received the deed, Othon knew the Property was encumbered by unpaid property taxes, but he did not pay them. By 2018, Othon was aware the Property remained in Carreon's name and that the delinquent property taxes had not been paid.

**Prior Tax Lien Foreclosure Action**

¶7 In January 2018, APTL mailed a notice of intent to foreclose via certified mail to two addresses it had identified as belonging to Carreon: a residential address in Nogales and the situs address for the Property.[2] *See* A.R.S. § 42-18202(A)(1) (requiring tax lien purchaser to send notice of intent to file foreclosure action at least thirty days before doing so). But both envelopes were returned by the Postal Service and marked as follows: "Return to Sender, Unclaimed, Unable to Forward." APTL made no further

---

[1]Othon testified that he sought to acquire APTL's tax lien because he had not filed income tax returns and had not paid taxes on the funds used to purchase the Property from Carreon. He planned to purchase APTL's tax lien, complete his purchase from Carreon, and then "foreclose on [him]self" in order to hide the fact that he had used untaxed funds to acquire the Property. Othon conceded under oath that his efforts to conceal his income from the Internal Revenue Service and "launder" the untaxed money were illegal.

[2]According to the trial court's order, APTL's counsel stated in an affidavit that he had attempted to locate "the residence and whereabouts" of Carreon for purposes of providing the pre-litigation notice "by checking the Santa Cruz County telephone directory, Peoplefinders computer program, Department of Motor Vehicle records, and Santa Cruz County probate records." The affidavit in question is not included in the record.

attempts to locate Carreon for purposes of sending the thirty-day notice to her.[3]

¶8        The records of the Santa Cruz County Recorder had shown since August 2017 that the residential address to which APTL sent the thirty-day notice in January 2018 no longer belonged to Carreon. That residence had been sold at public auction in July 2017. After both notices were returned unopened and unclaimed, APTL never approached personnel at the Property—the situs address—or at neighboring buildings to seek additional information regarding Carreon's whereabouts.

¶9        In May 2018, more than three years after its purchase of the Property tax lien, APTL filed its foreclosure action in Santa Cruz County Superior Court, naming Carreon as a defendant. In June, APTL's process server attempted to serve the summons and complaint on Carreon at the residential address of public record—which, as noted above, had been sold at public auction in 2017. He stated in his affidavit that Carreon no longer resided at that address, which he avowed was "a VACANT and EMPTY HOUSE." The Postal Service indicated that Carreon had moved without providing a forwarding address. In September 2018, after some additional efforts to locate Carreon but no inquiries at the Property itself,[4] APTL published the tax lien foreclosure documents in *Nogales International*, a newspaper of general circulation within Santa Cruz County.[5]

¶10       In December 2018, APTL filed an affidavit of default, alleging that Carreon had been properly served but had failed to answer. In February 2019, the superior court entered a judgment of default, foreclosing Carreon's right to redeem. In March, the Santa Cruz County Treasurer

---

[3]The record before us does not reflect, and neither the parties nor the trial court have addressed, whether APTL also mailed the thirty-day notice to the Santa Cruz County Treasurer, as required under § 42-18202(A)(2).

[4]In particular, APTL's process server unsuccessfully attempted service at an address in Mesa, Arizona, where the occupant did not know the name Carreon. APTL also conducted a search of Maricopa County probate and civil lawsuit records, as well as a search of the Maricopa County Assessor's records.

[5]APTL's affidavit in support of service by publication contained the unintentional misstatement, which the parties agree was incorrect, that the Property—as opposed to Carreon's former residence—was empty at the time service was attempted. In fact, as noted above, the Property was at all relevant times a commercial warehouse occupied by three businesses.

acknowledged the default judgment and issued a treasurer's deed conveying the Property to APTL. APTL recorded the deed on March 12, 2019.

¶11        In April 2019, Carreon moved to vacate the default judgment. She claimed APTL had inappropriately utilized service by publication, rendering the default judgment void. Rather than submitting an affidavit of her own in support of this motion to vacate, Carreon attached an affidavit from Othon. In that affidavit, Othon falsely stated that Carreon was still the landlord of the Property and that he was merely her agent and tenant. He further attested that service on Carreon was never attempted at the Property and that no inquiry was made there to ascertain Carreon's whereabouts. However, on August 8, 2019, Carreon moved to withdraw her motion to vacate the default judgment. On August 28, the trial court granted that motion "with prejudice."

**This Quiet Title Action**

¶12        On August 21, 2019—seven days before the trial court in the tax lien foreclosure action granted Carreon's motion to withdraw her motion to vacate the default judgment—APTL filed the underlying complaint in this action seeking to quiet title to the Property, naming Othon as a defendant. In October, Othon (represented by the same attorney who had represented Carreon in the tax lien foreclosure action) filed an answer and counterclaim, asking the court to deny APTL's claim for quiet title, find the default judgment void, and declare title to the Property vested in him. The parties cross-moved for summary judgment.

¶13        After a hearing, the trial court granted Othon's motion and denied APTL's. In particular, it ruled that Othon, as a party with the right to redeem, had standing to challenge the default judgment in the foreclosure action as void for lack of jurisdiction due to insufficient service of notice and process on Carreon. It then ruled that APTL had failed to properly provide the statutorily required thirty-day notice to Carreon before filing the tax lien foreclosure action, or to properly serve her with the summons and complaint. The court thus concluded that the March 2018 tax lien foreclosure judgment "is void" and "did not operate to foreclose Othon's rights." This appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

**Discussion**

**Standard of Review**

**¶14**       In reviewing a trial court's rulings on cross-motions for summary judgment, we review questions of law *de novo*, construing the facts and reasonable inferences in the light most favorable to the party against whom summary judgment was granted, here APTL. *Nelson v. Phx. Resort Corp.*, 181 Ariz. 188, 191 (App. 1994).  We will affirm the grant of summary judgment if there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law.  Ariz. R. Civ. P. 56(a); *Green Cross Med., Inc. v. Gally*, 242 Ariz. 293, ¶ 5 (App. 2017).

**Othon's Standing to Challenge Default Judgment as Void**

**¶15**       APTL asks us to reverse the trial court's ruling on the ground that "Othon does not have standing to contest the trial court's prior order of default" because "issues of notice and service are personal to a defendant (Ms. Carreon), and cannot be validly asserted by a third party (Mr. Othon)." This is a question of law, and "we review the trial court's standing determination de novo." *Aegis of Ariz., L.L.C. v. Town of Marana*, 206 Ariz. 557, ¶ 16 (App. 2003).

**¶16**       Here, the trial court acknowledged that the "general rule" is that a claim of inadequate service is personal to the person upon whom service was to be made.  But it concluded that Othon nonetheless had standing to attack the default judgment because his position as to Carreon "is similar" to that of an insurer, who has a "well-recognized right" to raise the issue of defective service as to its insured.  APTL challenges this holding as "erroneous," arguing "the analogy of an insurance company to its insured is not justified as it relates to Othon and Carreon."

**¶17**       It is well established in Arizona that an insurer "has the right to set aside a default judgment against its insured, not only on behalf of the insured, but on its own behalf." *Union Oil Co. of Cal. v. Hudson Oil Co., Inc.*, 131 Ariz. 285, 288 (1982).  APTL contends this is only because of the insurer's status as the insured's legal representative, who bears a contractual duty to protect the insured. This argument, however, ignores a separate rationale for the rule allowing insurers to challenge service on their insureds.  As our supreme court has explained, a default judgment creates not only a judgment against the insured, but also a debt under the insurance contract between the judgment debtor and the insurer, who should therefore have a right to defend against the default judgment.  *Id.*  In other words, an insurer has "a definite and substantial interest" in the outcome of litigation involving an insured to whom it may ultimately be found liable

for a judgment. *Koven v. Saberdyne Sys., Inc.*, 128 Ariz. 318, 321 (App. 1980) (finding insurer to have standing based on definite, substantial interest even though insurer "had previously denied coverage").

**¶18**        Likewise, Othon has "a definite and substantial interest" in the outcome of the tax lien foreclosure action. As the trial court explained, although Othon "should have recorded the deed given to him by Carreon," that unrecorded deed was still valid between him and Carreon, pursuant to A.R.S. § 33-412(B). He was therefore entitled, until the entry of a valid judgment foreclosing redemption, to redeem the tax lien to protect his claim on the Property. *See* A.R.S. §§ 42-18151(A)(1), (4) (property's owner and "[a]ny person who has a legal or equitable claim in the property, including a certificate of purchase of a different date," is entitled to redeem tax lien on said property), 42-18206 (person entitled to redeem may do so "at any time before judgment is entered, notwithstanding that an action to foreclose has been commenced"). As the court noted, Othon's failure to publicly record his deed did not eliminate his right of redemption, "because a real property tax lien may be redeemed at any time before judgment is entered by any person who has a legal or equitable claim in the property without regard as to the interest's recordation." *See id.* And, importantly here, that right may persist even after a tax lien foreclosure judgment has been entered if that judgment is flawed: a judgment that is void on its face due to lack of jurisdiction is "a legal nullity" that "cannot operate to foreclose a party's right to redeem." *Sprang v. Peterson Lumber*, 165 Ariz. 257, 264 (App. 1990).

**¶19**        Thus, unlike Carreon—who had little reason to vigorously contest the validity of a default judgment regarding a Property she had already conveyed[6]—Othon has "a definite and substantial interest" in establishing that the underlying default judgment is void and, thus, did not foreclose his right to redeem. As we have explained, a void judgment "may be attacked either directly *or collaterally* at any time within a reasonable time after entry of judgment." *Id.* at 264 (emphasis added); *see also Cooper v. Commonwealth Title of Ariz.*, 15 Ariz. App. 560, 564 (1971) (judgment that is void on its face "may be attacked at any time, collaterally or otherwise").

---

[6]It does not follow, as APTL argues on appeal, that notice to Carreon "is irrelevant," or that whether she "was properly served or received notice is moot as she had no interest in the Property to protect," having conveyed it to Othon. It is undisputed that Carreon was the property owner of record when APTL filed its tax lien foreclosure action, and APTL was therefore legally required to provide her with notice prior to initiating the lawsuit and to serve her with adequate process.

Here, having been named as a defendant in APTL's quiet title action regarding the Property—an action that is premised on the deed that resulted from the default judgment in question—Othon has standing to defend himself and his right to redeem by collaterally attacking that judgment as void.[7] *Cf. Daystar Invs., L.L.C. v. Maricopa Cnty. Treasurer*, 207 Ariz. 569, ¶¶ 15-16 (App. 2004) (finding non-party county treasurer had standing to challenge default judgment and resulting order to issue deed, based on "interest in determining his responsibilities under the circumstances").

¶20        APTL also contends Othon lacks standing because he "does not have a cognizable interest in the Property as to [APTL]" due to his failure to record the deed he received from Carreon.[8]  APTL argues that, although Othon maintains a cognizable interest in the Property as against Carreon, he has no interest in it as against "the world," including APTL.

¶21        APTL is correct that § 33-412(A) provides that all sales of real property are void as to "subsequent purchasers for valuable consideration without notice, unless they are acknowledged and recorded in the office of the county recorder as required by law."  But this and other recording statutes do not protect parties who obtain default judgments in tax lien foreclosure actions by failing to satisfy the required notice or service of process requirements (*i.e.*, judgments that are void as a matter of law).  The statutes presuppose *valid* judgments.  *See Sprang*, 165 Ariz. at 263-64.  Thus, APTL's arguments based on the recording statutes beg the question raised by Othon and addressed by the trial court:  Was the judgment obtained by APTL in the tax lien foreclosure action void due to a failure by APTL to provide the mandatory thirty-day notice or adequate service of process (or both) to Carreon—the undisputed property owner of record at the time?  If so, APTL cannot be correct that it "takes the Property free and clear of

---

[7]As explained above, this standing does not stem from any duty on Othon's part to protect Carreon or any privity between them.  We therefore need not address APTL's argument that "Othon's ability to challenge the prior judgment would only extend to the fullest possible extent Carreon could challenge the prior judgment."

[8]APTL further contends that Othon's submission of a misleading affidavit in the tax lien foreclosure action "precludes ownership interest under the sham affidavit doctrine."  But APTL did not raise this argument before the trial court, and we do not address it further.  *See Rigoli v. 44 Monroe Mktg., LLC*, 236 Ariz. 112, ¶ 28 (App. 2014) (arguments and theories raised for first time on appeal are untimely, waived, and impermissible basis for reversing entry of summary judgment).

Othon's claim" by having recorded a deed it obtained as the "successful plaintiff in its tax lien foreclosure action."  To the contrary, if the default judgment in that action—which led to the issuance of the deed—is void, the recording statutes do not favor APTL as against Othon or anyone else. *See id.* at 262-63 (treasurer's deed based on void default judgment "convey[s] nothing" and "doctrine of bona fide purchaser for value does not apply" because "if one buys nothing, one is simply not a purchaser"). This is why the trial court, having found the underlying judgment void, concluded that APTL is not a bona fide purchaser for value.

¶22         APTL's public policy arguments also fail.  We do not hold here, as APTL asserts, that a purchaser of real estate "does not need to record his deed or abide by the recording statutes in order to have a protectable interest."   As he conceded at oral argument on the cross-motions for summary judgment, Othon would surely "not have a case" as against a bona fide purchaser for value who had obtained a *valid* tax lien foreclosure judgment and then recorded the resulting deed.[9]  But, he must be permitted to defend himself in APTL's quiet title action on the ground that the judgment and resulting deed APTL wields against him are legal nullities that "cannot operate to foreclose [his] right to redeem." *Sprang*, 165 Ariz. at 262, 264.[10]

---

[9]This was the situation in the unpublished and factually distinct case referenced by APTL, in which the tax lien investor "detailed what steps it took in giving notice of the foreclosure action," only one of four notices was returned as undeliverable, and the challengers to the default judgment "conceded in the trial court that they had been properly served by publication." *Miller v. Russell*, No. 1 CA-CV 09-0077, ¶¶ 5, 19 (Ariz. App. July 7, 2011) (mem. decision).

[10]As our supreme court has explained, "standing is not a constitutional jurisdictional requirement in the state courts of Arizona," and "our reluctance to consider issues raised where there is no standing is solely a rule of judicial restraint." *State v. B Bar Enters., Inc.*, 133 Ariz. 99, 101 n.2 (1982).  Courts may therefore exercise their discretion to consider the merits of a case "despite an apparent lack of standing." *Id.*  It is true that we do so "only in exceptional circumstances, generally in cases involving issues of great public importance that are likely to recur." *Sears v. Hull*, 192 Ariz. 65, ¶ 25 (1998).  But assuming, *arguendo*, that Othon lacks standing to challenge the underlying default judgment as void due to inadequate service of notice and process on Carreon, this case presents a matter of general public importance.  Tax lien investors must not be rewarded for failing to satisfy notice or service of process requirements

**Voidness of Default Judgment**

¶23        As noted above, the trial court agreed with Othon that APTL failed to comply with the thirty-day pre-litigation notice requirement for a tax lien foreclosure action established at § 42-18202(A)(1), rendering the underlying default judgment void for lack of jurisdiction. APTL challenges that ruling on appeal, contending it satisfied the statutory notice requirement. We review *de novo* whether a default judgment is void. *BYS Inc. v. Smoudi*, 228 Ariz. 573, ¶ 18 (App. 2012).

¶24        The thirty-day pre-litigation notice required under § 42-18202 for tax lien foreclosure actions is jurisdictional. If the purchaser of a tax lien "fails to send the notice required by this section," the trial court is precluded by the statute from entering any action to foreclose the right to redeem until the required notice has been sent. § 42-18202(C); *see also Advanced Prop. Tax Liens, Inc. v. Sherman*, 227 Ariz. 528, ¶ 21 (App. 2011) (when notice inadequate, trial court not authorized to proceed with tax lien foreclosure action, and resulting default judgment void).

¶25        Section 42-18202(A)(1) provides two possible methods by which a tax lien holder intending to file an action to foreclose may provide the required notice before initiating litigation. First, notice may be sent via certified mail to "[t]he property owner of record according to the records of the county recorder in the county in which the property is located." Or, under the second option, notice may be sent (still via certified mail) to "[t]he property owner according to the records of the county assessor in the county in which the property is located" and—if they are different—the situs address of the property and "[t]he tax bill mailing address according to the records of the county treasurer in the county in which the property is located." § 42-18202(A)(1)(a)-(c). Under either alternative, the tax lien holder must also send the notice to the treasurer of the county where the property is located. § 42-18202(A)(2); *see also Sherman*, 227 Ariz. 528, ¶ 12.

¶26        In *Sherman*, we held that the first notice option under § 42-18202(A)(1) pinpoints the *identity* of the property owner, not a particular address to which notice must be sent. 227 Ariz. 528, ¶ 15. We observed that the statutory language "property owner of record" is immediately modified by the words "according to the records of the county recorder in the county in which the property is located." *Id.* The same is true of the second notice option under the statute: the term "property owner" is immediately modified by the phrase "according to the records of

---

with default judgments that, though void, are nonetheless immune from collateral challenge by individuals with a right to redeem but who are not property owners of record entitled to such notice and service themselves.

the county assessor in the county in which the property is located." § 42-18202(A)(1)(a). And, as we have noted, the county assessor is required under A.R.S. § 42-13051 to determine the owners of properties subject to taxation, not to maintain current addresses for those owners. *4QTKIDZ, LLC v. HNT Holdings, LLC*, Nos. 2 CA-CV 2019-0187, 2 CA-CV 2019-0188, 2 CA-CV 2019-0190, n.4 (Ariz. App. Feb. 8, 2021) (consol. mem. decision) (extending *Sherman*'s reasoning to § 42-18202(A)(1)(a)-(c)).[11] Thus, both notice provisions pinpoint the identity of the property owner, not particular addresses to which notice must be sent. They reflect a legislative intent that "the notice have a good chance of reaching the intended recipient," *Sherman*, 227 Ariz. 528, ¶ 16—a "high probability that the notice of the lien holder's intent to foreclose will reach the property owner," *id*. ¶ 19.

**¶27** Indeed, the broader statutory scheme governing tax lien foreclosure is designed to provide "the record owner of property and others who may claim a legal or equitable interest in the property an opportunity to avoid losing their interest in the property by paying the taxes and curing the delinquency." *Daystar Invs.*, 207 Ariz. 569, ¶ 16. A judgment obtained in violation of statutory requirements, including the notice requirement at issue here, "wrongfully interferes with these statutory protections." *Id.*; *see also Delo*, 232 Ariz. 133, ¶ 12 ("Equity favors the right to redeem and will not deny the right except upon *strict compliance* with the steps necessary to divest it." (emphasis added) (quoting *Harbel Oil Co. v. Steele*, 83 Ariz. 181, 185 (1957))).

**¶28** In this case, APTL sent the pre-litigation notice to two addresses: a residential address in Nogales and the situs address. APTL advised the trial court that the residential address had been the one on file with the county recorder, county assessor, and county treasurer. This, together with APTL's simultaneous mailing of the notice to the situs address of the Property, indicates an attempt to provide notice pursuant to both methods outlined in § 42-18202(A)(1). However, as noted above, APTL received both notices back unopened and marked "unclaimed."

**¶29** The residential address had not belonged to Carreon for a number of months prior to the attempted notice in late January 2018, having been sold at public auction in July 2017 (a fact that was reflected in the county recorder's records as of early August 2017). According to the trial court, APTL "did not investigate at the Santa Cruz County Recorder's Office" as to the residential address. APTL has never explained this failure,

---

[11]Although "not precedential," we cite this prior memorandum decision for its persuasive value. Ariz. R. Sup. Ct. 111(c)(1)(C).

which would have revealed the need for further investigation regarding Carreon's whereabouts based on the sale of her residence in 2017.

¶30        *Sherman*, the leading case in this area, involved similar facts. There, the prospective plaintiff (also APTL) attempted to utilize only the first statutory notification method, sending the notice to an address for the property owners on file with the county recorder. 227 Ariz. 528, ¶ 13. As here, the notice was returned unopened and marked "unclaimed." *Id.* ¶ 17. When APTL nonetheless initiated its lawsuit and attempted to serve the property owners with process, it learned that they had sold the address property five years earlier. *Id.* ¶¶ 4, 17. We ruled that, on those facts, APTL "did not send the notice of intent to foreclose to the [property owners of record] and therefore did not comply" with § 42-18202(A)(1). *Id.* ¶ 18. In particular, we concluded the statute "requires more than mailing the notice of intent to foreclose to an eight-year-old address that is no longer current, especially after learning the address was no longer current." *Id.*

¶31        In this case, the trial court concluded that, "[a]s in *Sherman*," APTL did not accomplish the requirement of sending notice to the property owner of record. Rather, APTL "sent the notice to an old address without learning whether it was sending [it] to the owner of record—Carreon," and thus mailed the notice "to a vacant residence with which Carreon no longer had direct connection." Moreover, having received the returned envelopes unopened and "unclaimed," APTL "could not conclude that it had complied with the statutory requirement to send the notice to Carreon." This analysis flows directly from *Sherman*, which compels us to reject APTL's argument that mailing a notice to Carreon's *former* personal residence was somehow a way of mailing notice to her as required under the statute.

¶32        In this case, APTL also mailed the notice to the situs address. But after that notice was returned unopened and marked "unclaimed," APTL did nothing to investigate at the Property. As the trial court put it, APTL "made almost no efforts to attempt to locate and give notice to Carreon through the subject property." In particular, "[n]o further investigation was done . . . such as inquiring of tenants, neighbors, knowledgeable persons or public records about current or former tenants, the whereabouts of the owner, etc." This is a striking distinction between the present case and *Sherman*, in which a process server approached the address where notice had been attempted unsuccessfully, spoke to "someone from the business then occupying" the building, learned that the property had been sold, and obtained a current address for the prior property owners from a salesman at a nearby business. 227 Ariz. 528, ¶ 4. Here, in contrast, APTL made *no* efforts to inquire at the Property or nearby

establishments regarding why the unclaimed notice had not reached Carreon or how she might be reached.

¶33 Was APTL required under § 42-18202(A)(1)(a)-(c) and *Sherman* to do so? APTL has taken the position, both before the trial court and on appeal, that nothing more was required. We disagree. APTL is correct that "[c]ompliance with § 42-18202(A) does not guarantee actual notice." *Sherman*, 227 Ariz. 528, n.4. But our prior jurisprudence establishes that merely mailing notice letters to an address of record or the situs address may not be sufficient, particularly where those notices are returned unopened and unclaimed, providing the lien holder with actual knowledge that notice has not been received. *See id.* ¶¶ 16-18; *4QTKIDZ*, Nos. 2 CA-CV 2019-0187, 2 CA-CV 2019-0188 & 2 CA-CV 2019-1090, ¶¶ 16-17; *see also Delo*, 232 Ariz. 133, ¶ 17 ("diligent search" and inquiry required "for purposes of giving proper notice of the tax-lien foreclosure lawsuit"). As the trial court put it, "The 30 day notice statute, the Arizona Rules of Civil Procedure, and *Sherman* mandate a genuine investigation into locating persons who have recorded and unrecorded interests in the property, not an incomplete or nominal attempt to locate." Here, APTL "was on notice that its attempts to provide the 30 day notice to Carreon [were] deficient when it received envelopes back from the Post Office marked as undeliverable." This is doubly true given that APTL—the tax lien holder involved in *Sherman*—had personally received "direction from the *Sherman* case that its conduct in this case did not satisfy its statutory obligations."

¶34 APTL insists that accurate contact information for Carreon was "not ascertainable," emphasizing that Othon has never submitted an affidavit stating that he or others at the Property could have provided such information if asked. We note, however, that APTL successfully obtained Carreon's contact information for purposes of deposing her in the tax lien foreclosure action. The record before us also indicates that Carreon—in addition to having maintained a business relationship with Othon over a number of years and retaining the same legal counsel with regard to the Property—is the mother of Othon's girlfriend. Therefore, an inquiry directed at Othon or others physically present at the Property could have yielded information sufficient to allow APTL to more effectively provide Carreon with the statutorily required pre-litigation notice. Instead, APTL took no additional steps, electing to file its tax lien foreclosure action with full knowledge that neither Carreon nor anyone else had received the notice of its intent to do so.

¶35 We therefore agree with the trial court that APTL "failed to comply with basic notice requirements for the 30 day notice of the intent to foreclose" and "did not act diligently as required by Arizona statute and

*Sherman*." Because notice under § 42-18202(A)(1) is required before a party may commence a tax lien foreclosure action, and failure to comply with the statute strips a trial court of jurisdiction to enter a foreclosure judgment, § 42-18202(C), the trial court correctly ruled that the default judgment in the prior tax lien foreclosure action is void as a matter of law.[12] "[A]ll acts performed pursuant to [that void] judgment," including the deed received and recorded by APTL, "are without legal effect." *Sprang*, 165 Ariz. at 265.[13]

**Remedy**

¶36        Finally, APTL contends the trial court erred by "crafti[ng] an improper remedy." In particular, APTL argues that Othon "has been unjustly enriched by owning the Property but never redeeming the taxes" owed on it—which APTL paid—"or paying [APTL's] fees and costs pursuant to A.R.S. § 42-18206." This argument ignores the content and actual result of the ruling from which APTL has appealed.

¶37        In his cross-motion for summary judgment, Othon asked the trial court to find that the underlying tax lien foreclosure judgment is "a nullity" due to lack of jurisdiction, and that he—as the equitable owner of the Property—"*be allowed to redeem*." (Emphasis added.) The court agreed that the judgment "is void and did not operate to foreclose Othon's rights." It then ordered only that Othon's cross-motion for summary judgment "is GRANTED" and that the judgment in question "is void." Thus, nothing in the ruling before us precludes Othon from redeeming the tax lien.

¶38        To date, APTL has obtained only a void default judgment regarding the Property and a resulting deed that conveyed nothing. In the action in which that result obtained, Othon (who was already an owner when the action began in May 2018) was not served personally or by

_____

[12]Both parties have argued at length regarding their respective "unclean hands." As the trial court correctly concluded, "equity gives way to law when rights are clearly established and defined by statute," and "the statutory requirement[] for notice in tax lien foreclosure cases takes this matter out of equity." In particular, when APTL failed to comply with the notice statute by "fail[ing] to diligently inquire as to the whereabouts of Carreon and any other possible interested parties, it lost its ability to claim equitable relief via unclean hands."

[13]Because we affirm the ruling of the trial court that the default judgment in the tax lien foreclosure action is void for lack of jurisdiction due to invalid notice, we need not address its additional ruling that the judgment is also void due to inadequately justified service of process by publication.

publication and did not redeem. The fee and cost provision of § 42-18206 is therefore not triggered. *See id.* (attorney fees and costs only due to tax lien foreclosure plaintiff "if the person who redeems has been served personally or by publication in the action, or if the person became an owner after the action began and redeems after notice is recorded").

¶39　　　　For these reasons, we reject APTL's request for fees and costs. Insofar as APTL has incurred fees and costs in this litigation, they are largely of APTL's own making. An adequately "diligent search" by APTL for purposes of satisfying the mandatory notice requirement in the underlying tax lien foreclosure action would almost certainly have allowed Othon to redeem the tax lien prior to the entry of judgment, either because Carreon "could have forwarded" the notice to Othon, *Delo*, 232 Ariz. 133, ¶ 17, or because inquiries at the Property aimed at providing notice to Carreon would have alerted Othon of APTL's intent to foreclose.

**Disposition**

¶40　　　　For the foregoing reasons, we affirm the order of the trial court. As the prevailing party, Othon is entitled to recover his costs on appeal, A.R.S. § 12-341, upon his compliance with Rule 21(b), Ariz. R. Civ. App. P.